## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

CARLOS RIVERA,

        Plaintiff,

-against-

PLAZA ACCESSORY OWNER LP, EL-AD
PROPERTIES NY LLC, CPS 1 REALTY LP LLC,
AND FHR (N.Y.) LLC,

        Defendants.

---

Civil Action No. 1:10-cv-06661 (WHP)

*Electronically Filed*

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

---

**LITTLER MENDELSON, P.C.**
One Newark Center, Eighth Floor
Newark, New Jersey 07102
973.848.4700
Attorneys for Defendants

**Of Counsel:**
William P. McLane, Esq.

**On the Brief:**
William P. McLane, Esq.
Jacqueline Hall, Esq.
Alison Andolena, Esq.

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................................... 1

I.      STATEMENT OF MATERIAL FACTS ......................................................................... 2

      A.     Plaintiff's Work History at The Plaza Before It Closed For Renovations in 2005.................................................................................................................... 2

      B.     Plaintiff Retains the Right to be Recalled to His Prior Classification When The Plaza Reopens................................................................................................ 4

      C.     The Plaza Recalls Plaintiff to His Prior Classification .......................................... 5

      D.     Plaintiff Grieves His Recall to the Palm Court...................................................... 7

II.     LEGAL ARGUMENT...................................................................................................... 9

      The Summary Judgment Standard..................................................................................... 9

      Plaintiff's National Origin, Race, Color, And Age Discrimination  Claims Warrant Dismissal............................................................................................... 10

      A.     Plaintiff's Race, Color, and National Origin Discrimination Claims Fail Because No Evidence of Discriminatory Animus Exists and The Hotel Legitimately Relied on the Union Recall List .................................................... 11

      B.     Plaintiff's Age Discrimination Claim Fails Because No Evidence of Discriminatory Animus Exists and The Hotel Legitimately Relied on the Recall List ......................................................................................................... 16

      C.     Plaintiff's Third Cause of Action Warrants Dismissal Because Neither The Plaza Nor Its Employees Engaged in Unlawful Discrimination........................... 17

CONCLUSION............................................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Agugliaro v. Brooks Bros., Inc.*,
  927 F. Supp. 741 (S.D.N.Y. 1996) ........................................................................................15

*Ali v. Mount Sinai Hosp.*,
  No. 92 Civ. 6129 (JGK) (NG), 1996 U.S. Dist. LEXIS 8079
  (S.D.N.Y. June 12, 1996).........................................................................................................12

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).................................................................................................................9

*Bielinski v. Hotel Pierre*,
  591 F. Supp. 2d 541 (S.D.N.Y. 2008)......................................................................................10

*Brennan v. Met. Opera Assoc.*,
  192 F.3d 310 (2d Cir. 1999).....................................................................................................10

*Celotex v. Catrett*,
  477 U.S. 317 (1986).................................................................................................................9

*Chertkova v. Conn. Gen. Life Ins. Co.*,
  92 F.3d 81 (2d Cir. 1996).........................................................................................................12

*Connell v. Consol. Edison Co. of N.Y., Inc.*,
  109 F. Supp. 2d 202 (S.D.N.Y. 2000)......................................................................................14

*DeMarco v. Holy Cross High Sch.*,
  4 F.3d 166 (2d Cir. 1993).........................................................................................................11

*Ebanks v. N.Y.C. Dep't of Envtl. Prot.*,
  No. 05-cv-3172 (RRM) (LB), 2009 U.S. Dist. LEXIS 27402
  (E.D.N.Y. Mar. 31, 2009) ........................................................................................................12

*Ferraro v. Kellwood Co.*,
  440 F.3d 96 (2d Cir. 2006)........................................................................................................10

*Fosen v. N.Y. Times*,
  No. 03-cv-3785 (KMK) (THK), 2006 U.S. Dist. LEXIS
  (S.D.N.Y. Oct. 11, 2006) .........................................................................................................14

*Goenaga v. March of Dimes Birth Defects Found.*,
  51 F.3d 14 (2d Cir. 1995)..........................................................................................................9

## TABLE OF CONTENTS
(CONTINUED)

PAGE

*Gorley v. Metro-North Commuter R.R.*,
   No. 99 civ. 3240 (NRB), 2000 U.S. Dist. LEXIS 18427
   (S.D.N.Y. Dec. 22, 2000)..........................................................................................................15

*McLee v. Chrysler Corp.*,
   109 F.3d 130 (2d Cir. 1997)........................................................................................................9

*Meiri v. Dacon*,
   759 F.2d 989 (2d Cir. 1985)........................................................................................................9

*Miller v. Nat'l Assoc. of Sec. Dealers*,
   703 F. Supp. 2d 230 (E.D.N.Y. 2010) ......................................................................................12

*Octobre v. Radio Shack Corp.*,
   No. 07-cv-3311 (KMK), 2010 U.S. Dist. LEXIS 22997
   (S.D.N.Y. Mar. 11, 2010) ..........................................................................................................15

*Parker v. Sony Pictures Entm't, Inc.*,
   260 F.3d 100 (2d Cir. 2001)........................................................................................................9

*Rodriguez v. City of N.Y.*,
   No. 09-cv-1378 (KAM)(RER), 2011 U.S. Dist. LEXIS 91171
   (E.D.N.Y. Aug. 16, 2011)..........................................................................................................10

*Rosario v. Hilton Worldwide, Inc.*,
   No. 09-cv-5336, 2011 U.S. Dist. LEXIS 8719
   (E.D.N.Y. Jan. 24, 2011) ...........................................................................................................12

*Salamon v. Our Lady of Victory Hosp.*,
   514 F.3d 217 (2d Cir. 2008)......................................................................................................10

*Weinstock v. Columbia Univ.*,
   224 F.3d 33 (2d Cir. 2000).................................................................................................9, 11

*Williams v. NYC Hous. Auth.*,
   61 A.D.3d 62 (N.Y. App. Div. 2009) ......................................................................................10

*Williams v. Palladia, Inc.*,
   No. 07-cv-7720 (CM), 2009 U.S. Dist. LEXIS 15516
   (S.D.N.Y. Feb. 10, 2009)...........................................................................................................12

**RULES**

Fed. R. Civ. P. 56(e) ..........................................................................................................................9

## PRELIMINARY STATEMENT

When the landmark Plaza Hotel closed for major renovations and a vast restructuring in 2005, its temporary closure – and subsequent reopening in 2008 – affected all its employees and drew interest from around the world.  The closing became the subject of countless hours of negotiations involving The Plaza ("the Hotel"), the New York Hotel & Motel Trades Council ("the Union"), and New York's Mayor Bloomberg.  In pertinent part, these negotiations yielded an agreement (the "City Hall Agreement") requiring the Hotel to recall employees who retained certain rights to their prior job classifications.

Plaintiff Carlos Rivera ("plaintiff") was one of those employees.  Prior to the Hotel's closing, the Hotel had classified him a "bartender" in the private dining department and that classification appeared on the recall list agreed to by the Hotel and the Union per the City Hall Agreement.  Private dining bartenders were "service" bartenders who mixed drinks for guests ordering room service.  Notwithstanding this classification, plaintiff had worked, at times, as a front bartender in the Hotel's famed Oak Bar, but his classification as a private dining bartender never changed even though the Oak Bar was not part of private dining.  Consequently, when the Hotel reopened in 2008, it recalled plaintiff to an available service bartender position in its Palm Court lobby restaurant, pursuant to the City Hall Agreement.  The individuals who informed plaintiff of his recall did not work for The Plaza when it closed in 2005, and never met him before recalling him to the service bartender position.  Thus, they had no first-hand, independent knowledge of the position he held before the Hotel closed.

Plaintiff disputed his recall to a service bartender position and believed The Plaza should have recalled him into a front bartender position notwithstanding his classification as a private

dining bartender. Plaintiff grieved his recall and prevailed, receiving full back pay for the period he worked as a service bartender in the Palm Court.

Notwithstanding this victory, plaintiff now claims that Defendants Plaza Accessory Owner LP, El-Ad Properties NY LLC, CPS 1 Realty LP LLC, and FHR (N.Y.) LLC (collectively, "The Plaza" or "the Hotel") discriminated against him because of his national origin (Dominican Republic), race and/or color (white), and age (49) when it recalled him as a service bartender – and not, as he argued at arbitration, that it constituted a violation of the City Hall Agreement. He makes these allegations despite his admission that no one at the Hotel ever made any derogatory comments about Dominicans or his age or ever treated him unprofessionally in any way. Indeed, the Hotel simply interpreted the provisions of the City Hall Agreement as it related to The Plaza's reopening and recalled hundreds of Hotel employees in what it thought was a neutral and agreed-upon manner, and no record evidence exists to demonstrate otherwise.

As described more fully below, The Plaza respectfully requests that this Court grant its summary judgment motion and dismiss plaintiff's Complaint in its entirety and with prejudice because the undisputed material facts make plain that no discriminatory conduct occurred.

## I.    STATEMENT OF MATERIAL FACTS

### A.    Plaintiff's Work History at The Plaza Before It Closed For Renovations in 2005

Since it opened in 1907, The Plaza has remained not only one of New York City's finest hotels, but also a cultural landmark. Today, The Plaza consists of, among other things, a traditional hotel, a health and beauty spa, and multiple dining outlets and bars. In all of its operations, The Plaza is committed to maintaining a workplace free from unlawful discrimination and harassment on the basis of all protected categories, including age, race, color,

and national origin. (Certification of William P. McLane ("McLane Cert."), Ex. G). The Hotel encourages all employees – including plaintiff, who acknowledged receiving The Plaza's Discrimination and Harassment Prevention Policy – to report discriminatory or harassing conduct to their supervisors, human resources representatives, or a toll-free ethics hotline. (*Id.*).

Plaintiff was born on September 8, 1962 in the Dominican Republic. (Pl. Dep. at 20:7 to 21:2). He identifies his race as "white." (McLane Cert., Ex. H). On October 12, 1988, plaintiff began working as a bus boy in the Oak Room bar, then part of The Plaza. (Pl. Dep. at 18:4-16). He became a member of the Union almost immediately after commencing employment. (Pl. Dep. at 19:19-21). He worked as a bus boy for a few years, then became a bar back at the Oyster Bar, another Hotel bar. (Pl. Dep. at 18:17 to 19:3). As a bar back, he assisted bartenders in setting up and serving beverages and food. (Pl. Dep. at 23:8-17). He worked as a bar back for approximately five years, then became a service bartender in the Hotel's Edwardian Room. (Pl. Dep. at 26:8-23, 28:5-14). Service bartenders mix drinks for the wait staff and room service personnel to serve. (McLane Cert., Ex. I, ¶¶ 36-37, 40).

Plaintiff claims that in or around 2001, he also began working as a front bartender at the Oak Bar, and held that position until The Plaza closed for renovations in 2005. (Pl. Dep. at 28:18-23, 30:7-10). A front bartender mixes drinks and serves them directly to the public. (McLane Cert., Ex. I, ¶¶ 33, 38). Front bartenders and service bartenders at The Plaza receive the same hourly rate, but service bartenders generally receive fewer tips. (Bueno Dep. at 50:20 to 52:15).

Regardless of whether plaintiff occasionally performed front bartender duties, at the time The Plaza closed in 2005, his job classification on file was "bartender" in the private dining department. (Bravo Dep. at 11:5-23, 17:20 to 19:5; Cedeno Dep. at 44:4 to 45:12; Bueno Dep. at

3

19:2-5; Lai Dep. at 27:21-25; McLane Cert., Ex. J).   Private dining bartenders were service

bartenders who mainly prepared drinks for room service personnel to serve to guests. (Bueno

Dep. at 27:17-18).   Private dining bartenders often worked in Hotel bars or outlets outside of

their primary classification to cover for others, but doing so did not affect their classification

unless the transfer was permanent and the manager submitted the appropriate paperwork. (Bravo

Dep. at 18:11 to 19:15).   No such paperwork was ever submitted for plaintiff.   (Bravo Dep. at

13:4 to 14:21).

**B.     Plaintiff Retains the Right to be Recalled to His Prior Classification When
         The Plaza Reopens**

In late 2004, the Hotel informed its employees and the Union of its plan to close in 2005

for approximately two years for a major transformation from solely a transient hotel to a

multifaceted condominium apartment, condominium hotel, and transient hotel.   (Pl. Dep. at

33:21 to 34:19; McLane Cert., Ex. K).   The Union and Hotel engaged in extensive negotiations

regarding the renovation's impact on bargaining unit employees. (Cedeno Dep. at 9:2-12; *see*

McLane Cert., Ex. K).

On April 13, 2005, the Hotel and the Union reached an agreement known as the "City

Hall Agreement," so named because the Mayor of New York City played a role in establishing

the terms on which the parties eventually agreed. (Lai Dep. at 22:2 to 23:25; Pl. Dep. at 34:11 to

35:12; McLane Cert., Ex. K).   The City Hall Agreement reaffirmed that the Industry-Wide

Collective Bargaining Agreement ("the Industry-Wide Agreement") remained binding on the

Hotel and the Union unless explicitly modified by the City Hall Agreement.  (McLane Cert., Ex.

K, ¶ 2).  Under the City Hall Agreement, affected bargaining unit employees could relinquish

any right to recall or rehire when the Hotel reopened and instead receive "enhanced severance

benefits," which equaled two times the severance benefits otherwise due the employees under the

4

Industry-Wide Agreement.   (McLane Cert., Ex. K, Addendum I ("Employee Severance Benefits/Recall Rights"); McLane Cert., Ex. L, p. 60).  Alternatively, affected employees could forego enhanced severance, retain their recall rights, and receive a regular severance in accordance with the City Hall Agreement.  (*Id.*; Pl. Dep. at 36:10-23).  The City Hall Agreement required the Hotel to recall such employees to their "*prior classification, as the same is available*."  (McLane Cert., Ex. K, Addendum I, Section A) (emphasis added).

Plaintiff chose to forgo enhanced severance and retain his recall rights.  (Pl. Dep. at 36:10-23; McLane Cert., Ex. M).  All of the Hotel's other bartenders, except Liam Flanagan – who is Caucasian and in his mid-forties – chose enhanced severance and waived their recall rights.  (Pl. Dep. at 79:7-18; Flanagan Dep. at 15:21-22, 18:12-13).

As early as 2005, before The Plaza officially closed, plaintiff expressed concern that his job classification was incorrect.  (Pl. Dep. at 156:21 to 158:2).  Again, in January 2007, during the renovation, plaintiff expressed his belief that the Union listed him under the wrong job classification.  (McLane Cert., Ex. N).  To that end, he contacted the Union in an effort to reclassify his position – which he thought was incorrectly recorded as bar back – to bartender.  (Pl. Dep. at 82:8-15; McLane Cert., Ex. N).  He also had friends write letters to the Union and Hotel on his behalf to "clear up [his] job classification."  (Pl. Dep. at 92:24 to 93:13).  One such letter, which a former Plaza employee wrote on his behalf, recommends him for "Oak Bar, Service bar or wherever liquor skills are required."  (McLane Cert., Ex. O).

### C.     The Plaza Recalls Plaintiff to His Prior Classification

Before the Hotel closed, it operated the world-famous Oak Bar and the Oyster Bar.  Upon reopening, the Oak Bar, while still existing, was no longer operated by the The Plaza, but by an outside company.  (Pl. Dep. at 86:6-9).  The Plaza had no authority to place any employee there.  (Pl. Dep. at 86:3-11).  Indeed, plaintiff talked to the Union about getting a job at the Oak Bar, but

5

the Union said it was not possible because the Hotel no longer operated it. (Pl. Dep. at 113:12-22).  The Hotel now operated two new bars: the Champagne Bar in its lobby and the Rose Club. (Pl. Dep. at 112:15-20).

In January 2008, in accordance with the City Hall Agreement, plaintiff received a letter from Director of Human Resources Rajan Lai, requesting plaintiff contact the Hotel to confirm his intention of returning to The Plaza as a bartender effective February 11, 2008.  (McLane Cert., Ex. P; Pl. Dep. at 69:7-20).  When plaintiff called the Hotel, Lai – who had never met plaintiff and was not employed by The Plaza when it closed – told him the Hotel would recall him as a service bartender in the Palm Court (a restaurant in the Hotel lobby which, at the time, primarily served afternoon tea service).  (Pl. Dep. at 70:12 to 71:2; Lai Dep. at 41:20 to 42:6, 51:5-12).

Lai and Carlos Bueno, the Hotel's new director of outlets, recalled plaintiff to the Palm Court bar based solely on recall lists approved by the Union that showed plaintiff's classification as a private dining bartender.  (Pl. Dep. at 129:12-14, 186:18 to 187:10; Cedeno Dep. at 44:4 to 45:12; Bueno Dep. at 17:6-13, 19:2-5, 21:2-11, 5:15-21; Lai Dep. at 27:21-25; McLane Cert., Ex. J).  When the Hotel reopened, separate private dining bartender positions no longer existed, so Lai and Bueno recalled plaintiff into another service bartender position in the Palm Court. (Pl. Dep. at 121:12-19, 124:16-25; Lai Dep. at 27:21-25, 28:2-11, 29:2-13).  Like Lai, Bueno did not work at The Plaza before it closed in 2005, so he did not know plaintiff before his recall as a service bartender.  (Pl. Dep. at 123:25 to 124:8, 70:12 to 71:2).

After he reported to work at the Hotel in February 2008, plaintiff told Bueno that he felt he should be working in a front bar (Rose Club or Champagne Bar) rather than the Palm Court restaurant as a service bartender.  (Pl. Dep. at 110:10-15, 122:2-7; Bueno Dep. at 60:11-18).

6

Bueno, who, like plaintiff, is Dominican, said he would look into the matter and correct any errors that may exist. (Pl. Dep. at 123:9-13, 121:20-23). Plaintiff also spoke to Lai about the issue. (Pl. Dep. at 126:21 to 127:12, 125:6-16; Lai Dep. at 51:13 to 52:12). Lai investigated whether the Hotel recalled plaintiff to the proper position by, among other things, confirming with The Plaza's payroll manager that plaintiff's prior classification was, in fact, private dining bartender. (Bravo Dep. at 11:5-23, 6:3-5, 17:20 to 18:3; Lai Dep. at 72:24 to 73:8, 77:11-20). Lai also spoke with Karim Abdel Hamid, who was the director of room dining before The Plaza closed in 2005, and he also confirmed that plaintiff was classified as a private dining bartender. (Lai Dep. at 71:16 to 72:23). In addition, Lai tried to contact the former director of human resources to ascertain plaintiff's classification before the Hotel closed, but could not reach him. (Lai Dep. at 74:23 to 75:10).

While no doubt exists that plaintiff at times performed work as a front bartender at the Oak Bar, there is also no doubt that the Hotel and Union listed his classification as private dining (service) bartender when he was recalled in early 2008. (Bravo Dep. at 11:5-23, 17:20 to 19:5; Cedeno Dep. at 44:4 to 45:12; Bueno Dep. at 19:2-5; Lai Dep. at 27:21-25; McLane Cert., Ex. J).

### D.    Plaintiff Grieves His Recall to the Palm Court

Unable to verify plaintiff's claim that he was misclassified, Lai declined to change his classification. (Bravo Dep. at 11:5-23, 6:3-5, 17:20 to 18:3; Lai Dep. at 71:16 to 73:8, 74:23 to 75:10, 77:11-20). Plaintiff then filed a grievance with his Union in March or April 2008. (Pl. Dep. at 134:3-11). On November 13 and December 11, 2008, after settlement discussions broke down, the parties arbitrated the case before an impartial chairperson. (Pl. Dep. at 142:6-16; McLane Cert., Ex. Q). After the arbitration hearing, but before the decision, the Hotel moved plaintiff to a front bartender position because the Palm Court temporarily closed and, in accordance with the Industry-Wide Agreement, the Hotel transferred all Palm Court employees

with more seniority into positions in the Champagne Bar and Rose Club, The Plaza's front bars. (Pl. Dep. at 145:9-24, 79:21 to 80:1; McLane Cert., Ex. Q).

At the arbitration, the Union argued that plaintiff had higher seniority than newly-hired front bartenders in the Champagne Bar and Rose Club and he should have been recalled to a front bartender position there as opposed to the Palm Court service bartender position. (McLane Cert., Ex. Q, p. 4-5). The Union did not contend at any time during the arbitration that the Hotel's motive in recalling plaintiff to the Palm Court was to discriminate against plaintiff because of his age or national origin, but rather argued that the Hotel's interpretation of the recall provisions violated the City Hall Agreement and the Industry-Wide Agreement. (*See id.*). The Hotel disputed that it violated either agreement. (McLane Cert., Ex. Q, p. 5-6). It argued that before the Hotel reopened, the Union was aware of plaintiff's classification as a private dining bartender on the recall list but never contested plaintiff's designation; therefore, the Hotel placed plaintiff where the agreements indicated someone within his classification should be placed. (*Id.*).

The arbitrator sustained the Union's grievance and awarded plaintiff full back pay, which plaintiff received. (Pl. Dep. at 152:5-15; Cedeno Dep. at 46:11-15; McLane Cert., Ex. Q, p. 12). The arbitrator made no finding that discrimination played any role in plaintiff's recall, but rather based his decision entirely on plaintiff's experiences as a bartender as compared to others the Plaza hired after it reopened. (Pl. Dep. at 162:17 to 163:12; McLane Cert., Ex. Q). The arbitrator never specifically held that plaintiff's "private dining bartender" classification was incorrect. (McLane Cert., Ex. Q).

Today, plaintiff remains employed as a front bartender at the Rose Club and Champagne Bar. (Pl. Dep. at 17:24 to 18:3, 168:25 to 169:3). Nonetheless, in August 2010, plaintiff filed a

Complaint alleging that the Hotel's decision to recall him to the Palm Court constitutes national origin, race, color, and age discrimination.

## II.     LEGAL ARGUMENT

### The Summary Judgment Standard

Summary judgment is "a tool for clearing the calendar of doomed lawsuits . . ." *Weinstock v. Columbia Univ.,* 224 F.3d 33, 40 (2d Cir. 2000). Summary judgment is equally appropriate in discrimination cases as in other litigation because its purpose is the same in all cases: "avoiding protracted, expensive and harassing trials." *Id.* at 41 (citation omitted).

Summary judgment is appropriate in this case. To avoid summary judgment, plaintiff must demonstrate specific facts showing a genuine issue to be tried. Fed. R. Civ. P. 56(e); *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex v. Catrett*, 477 U.S. 317, 324 (1986)). While the Court must resolve all ambiguities and draw all permissible inferences in a light most favorable to the non-moving party, s*ee Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), plaintiff cannot survive summary judgment by resting his case solely on conclusory statements, speculation, unsubstantiated allegations, or merely colorable evidence. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). *See also Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir. 1985) (stating that "[t]o allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases.").

"Though caution must be exercised in granting summary judgment where motive is genuinely in issue, summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.,* 109 F.3d 130, 135 (2d Cir. 1997) (citations omitted). This is such a case.

9

**Plaintiff's National Origin, Race, Color, And Age Discrimination
Claims Warrant Dismissal**

Plaintiff's Title VII, NYSHRL, and NYCHRL claims all are analyzed under the same

burden-shifting framework. *See, e.g.*, *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226

n.9 (2d Cir. 2008) ("We typically treat Title VII and NY[S]HRL discrimination claims as

analytically identical." (citation omitted)); *Ferraro v. Kellwood Co.*, 440 F.3d 96, 99 (2d Cir.

2006) ("The standards for liability under [NYSHRL and NYCHRL] are the same as those under

the equivalent federal antidiscrimination laws." (citation omitted)); *Brennan v. Met. Opera

Assoc.*, 192 F.3d 310, 317 n.1 (2d Cir. 1999) ("Employment discrimination claims brought under

the NYSHRL are analyzed identically to claims under the ADEA and Title VII."); *Bielinski v.

Hotel Pierre,* 591 F. Supp. 2d 541, 550 n.101 (S.D.N.Y. 2008) ("In addition to Title VII and

ADEA claims, the *McDonnell Douglas* burden shifting analysis applies to discrimination claims

arising under the NYSHRL and the NYCHRL."). While the case law demonstrates that courts

apply the Title VII analysis to evaluate claims under the NYSHRL and the NYCHRL, the

NYCHRL's legislative history and amendments note that the NYCHRL is to be more liberally

construed than federal and state anti-discrimination laws. *See, e.g.*, *Williams v. NYC Hous.

Auth.,* 61 A.D.3d 62, 74-75 (N.Y. App. Div. 2009). There appears, however, to be no authority

permitting a plaintiff's claims under the NYCHRL to survive summary judgment where, as here,

the plaintiff cannot provide evidence that raises even an inference of discrimination. *See, e.g.*,

*Rodriguez v. City of N.Y.*, No. 09-cv-1378 (KAM)(RER), 2011 U.S. Dist. LEXIS 91171, at *33-

35 (E.D.N.Y. Aug. 16, 2011) (granting employer summary judgment on plaintiff's NYCHRL

claims because age was not a motivating factor for plaintiff's termination).

Specifically, to establish a *prima facie* case of discrimination under Title VII, the

NYSHRL, or the NYCHRL, a plaintiff must show that he is a member of a protected class, was

qualified for his position, and suffered an adverse employment action under circumstances give

rise to an inference of discrimination. *Weinstock,* 224 F.3d at 42.  If the plaintiff establishes a

*prima facie* case, the burden then shifts to the employer to articulate a legitimate, non-

discriminatory reason for the employment action.  *Id.*  The burden then shifts back to the plaintiff

to "come forward with evidence that the [employer's] proffered, non-discriminatory reason is a

mere pretext for actual discrimination." *Id.*   In determining whether the articulated reason for

the action is pretext, the inquiry is not whether a defendant's stated purpose is unwise or

unreasonable. *DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 170-71 (2d Cir. 1993).  "Rather,

the inquiry is directed toward determining whether the articulated purpose is the actual purpose

for the challenged employment-related action." *Id.*  Moreover, plaintiff's burden is to "produce

not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the

legitimate, non-discriminatory reasons proffered by the [defendant] were false, *and* that more

likely than not [discrimination] was the real reason for the [employment action].'" *Weinstock,*

224 F.3d at 42 (emphasis added) (citations omitted).

> **A.  Plaintiff's Race, Color, and National Origin Discrimination Claims Fail Because No Evidence of Discriminatory Animus Exists and The Hotel Legitimately Relied on the Union Recall List**

Despite the fact that no one at The Plaza ever made any derogatory comments about

Dominicans or plaintiff's age, and plaintiff's admission that neither Lai nor Bueno ever treated

him unprofessionally, plaintiff alleges in the Complaint that the Hotel's decision to recall him to

the Palm Court constitutes national origin, race, color, and age discrimination. (Pl. Dep. at

154:14 to155:5, 178:1-14).

Other than plaintiff's baseless opinions, however, no evidence exists to suggest that his

recall occurred under circumstances giving rise to an inference of discrimination. Circumstances

11

giving rise to an inference of race discrimination may include "'actions or remarks made by decision makers that could be viewed as reflecting a discriminatory animus, [or] preferential treatment given to employees outside the protected class.'" *Williams v. Palladia, Inc.*, No. 07-cv-7720 (CM), 2009 U.S. Dist. LEXIS 15516, at *20 (S.D.N.Y. Feb. 10, 2009) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996)). Plaintiff's conclusory allegations, however, are insufficient to satisfy this burden. *See, e.g.*, *Ebanks v. N.Y.C. Dep't of Envtl. Prot.*, No. 05-cv-3172 (RRM) (LB), 2009 U.S. Dist. LEXIS 27402, at *15 (E.D.N.Y. Mar. 31, 2009). Indeed, "[i]t is not enough that [plaintiff] sincerely believes that []he was the subject of discrimination; '[a] plaintiff is not entitled to a trial based on pure speculation, no matter how earnestly held.'" *Ali v. Mount Sinai Hosp.*, No. 92 Civ. 6129 (JGK) (NG), 1996 U.S. Dist. LEXIS 8079, at *22–23 (S.D.N.Y. June 12, 1996) (citation omitted); *see also Rosario v. Hilton Worldwide, Inc.*, No. 09-cv-5336, 2011 U.S. Dist. LEXIS 8719, at *12 (E.D.N.Y. Jan. 24, 2011) ("plaintiff's speculations, generalities, and gut feelings, however genuine, do not allow for an inference of discrimination to be drawn and are not sufficient to defeat a motion for summary judgment." (citations omitted)); *Miller v. Nat'l Assoc. of Sec. Dealers*, 703 F. Supp. 2d 230, 248 (E.D.N.Y. 2010) ("When an employer accused of discrimination provides convincing evidence explaining its conduct, and the plaintiff's case rests on conclusory allegations such as these, it is proper for a court to conclude that there is no genuine issue of material fact and to grant summary judgment for the employer."). Here, no record evidence creates an inference of discrimination; rather, the undisputable evidence demonstrates legitimate reasons for The Plaza's actions.

Significantly, plaintiff admits that no one at Hotel ever made any negative comments about his Dominican national origin or otherwise treated him unprofessionally. (Pl. Dep. at

12

154:14-24, 178:1-17). Rather than record evidence, plaintiff bases his national origin, race, and color discrimination claims on his theory that when the Hotel closed in 2005, there were "lots of minorities working there from Asia, blacks, whites, Arabs, different nationalities," but when it reopened, there were more Caucasian bartenders. (Pl. Dep. at 130:22 to 131:11).

This conjecture fails for numerous reasons. First, plaintiff admits that all the bartenders who were at The Plaza when it closed in 2005, except him and Liam Flanagan, who is Caucasian, voluntarily accepted enhanced severance in exchange for their recall rights at The Plaza, or chose to pursue work at the Oak Bar rather than return to The Plaza. (Pl. Dep. at 130:22 to 132:14). Had plaintiff chose to wait another month instead of accepting the Palm Court position in February 2008, he too would have been hired at the Oak Bar and would today be working where he now claims he always wanted to work. (Pl. Dep. at 119:7 to 120:22). As a result, the fact that other bartenders did not return to the Hotel had absolutely nothing to do with their national origins, races, or colors, but rather their *own decisions* to forego recall rights in favor of enhanced severance.

Second, plaintiff's "theory" fails because not all bartenders The Plaza hired when it reopened were Caucasian or white, as plaintiff will claim. (Flanagan Dep. at 48:11-22, 49:12 to 50:2). Additionally, plaintiff's race and color discrimination claims are contradictory because he identifies himself as "white," but apparently bases his claim on his allegation that when the Hotel reopened, it hired white bartenders. (McLane Cert., Ex. H).

Plaintiff's national origin, race, and color discrimination claims also suffer from a lack of any inference of discrimination because Lai and Bueno never met plaintiff – and therefore could not know his national origin, race, or color – before making the decision to recall him to the Palm Court. (Pl. Dep. at 123:25 to 124:8). Plaintiff's national origin discrimination claim is

13

further belied by the fact that Bueno participated in plaintiff's recall to a service bartender position and is of the same Dominican national origin as plaintiff. (Bueno Dep. at 17:6-13, 19:2-5, 21:2-16; Pl. Dep. at 121:20-23). *Fosen v. N.Y. Times*, No. 03-cv-3785 (KMK) (THK), 2006 U.S. Dist. LEXIS, at \*14-15 (S.D.N.Y. Oct. 11, 2006) (holding that any inference of discrimination was "critically undermined" by the fact that the individuals responsible for the complained-of action were in the same protected class as the plaintiff); *see also Connell v. Consol. Edison Co. of N.Y., Inc.*, 109 F. Supp. 2d 202, 209 (S.D.N.Y. 2000). Moreover, as food and beverage director, Bueno held a highly-visible position at the Hotel, which further demonstrates a lack of discriminatory animus by the Hotel toward Dominicans. (Bueno Dep. at 5:15 to 7:14).

Even if plaintiff could establish circumstances giving rise to an inference of discrimination and otherwise meet the requirements of a *prima facie* case, which he cannot, his discrimination claims fail because he cannot cast doubt on The Plaza's legitimate, non-discriminatory reasons for recalling him to the Palm Court. With respect to recalling employees, the Hotel was bound at all times by the City Hall Agreement, which required the Hotel to recall employees who declined enhanced severance to their "prior classification, as the same is available." (McLane Cert., Ex. K, Addendum I, Section A). At least three recall lists relied on by The Plaza – which were never corrected or disputed by the Union during the recall process – designate plaintiff as a bartender in the private dining department. (McLane Cert., Ex. J). A private dining bartender was a service bartender position, so the Hotel recalled plaintiff to an available service bartender position in the Palm Court. (Bueno Dep. at 27:17-18; Pl. Dep. at 121:12-15; Lai Dep. at 27:21-25, 28:2-11, 29:2-13). In addition, after plaintiff contested his recall, at least two people who worked at The Plaza before it closed confirmed that his prior

14

classification was, in fact, private dining bartender. (Bravo Dep. at 11:5-23, 17:20 to 18:3; Lai Dep. at 71:16 to 73:8, 77:11-20). Thus, the undisputed record evidence reveals that The Plaza had legitimate, non-discriminatory reasons for recalling plaintiff to a service bartender position.

That plaintiff grieved his recall to the Palm Court and ultimately prevailed does not establish pretext to defeat this motion. First, the arbitrator solely interpreted the relevant contracts; no one raised, and the Hotel did not defend against, any discrimination claims at arbitration. (McLane Cert., Ex. Q). At worst, the Hotel violated the City Hall Agreement or the Industry-Wide Agreement by recalling plaintiff to the Palm Court instead of a front bar. Any such legitimate, though arguably incorrect, interpretation of those contracts, however, does not cast doubt on the rational, non-discriminatory explanation for the Hotel's conduct. Indeed, "[a]n employer may rely on even erroneous information in making employment decisions, so long as it does so in good faith." *Octobre v. Radio Shack Corp.*, No. 07-cv-3311 (KMK), 2010 U.S. Dist. LEXIS 22997, at *29 (S.D.N.Y. Mar. 11, 2010); *see also Gorley v. Metro-North Commuter R.R.*, No. 99 civ. 3240 (NRB), 2000 U.S. Dist. LEXIS 18427, at *24 (S.D.N.Y. Dec. 22, 2000) (noting that "[i]f the defendant relied upon the information in good faith, its dismissal of plaintiff would not violate Title VII"); *Agugliaro v. Brooks Bros., Inc.*, 927 F. Supp. 741, 747 (S.D.N.Y. 1996) (noting that "[e]ven assuming defendants were wrong in their belief . . . what is significant [for the purposes of determining pretext] is that they based their decision to dismiss plaintiff on that belief").

Second, any argument that the Hotel's reasons for recalling plaintiff to the Palm Court were pretext for discrimination are undermined by plaintiff's belief, as early as 2005, that his classification was incorrect, combined with his admission that no one at The Plaza discriminated against him before the Hotel closed in 2005. (Pl. Dep. at 30:24 to 31:4, 156:21 to 158:2). Even

if the Hotel erroneously classified plaintiff as a private dining bartender before it closed in 2005,
plaintiff admits that any such oversight was not discriminatory.  (Pl. Dep. at 30:24 to 31:4).  It
follows that Lai and Bueno's reliance on plaintiff's classification – even if incorrect – was also
not discriminatory, especially because both of them were hired after the Hotel closed in 2005 and
had no independent knowledge of plaintiff, his job duties, or his classification and were not
responsible for the incorrect classification because it happened before their hire.  (Bueno Dep. at
5:15-21; Lai Dep. at 7:2-4).

 Finally, when he became aware of plaintiff's belief that the Hotel should have recalled
him to a front bartender position, Lai investigated whether the Hotel recalled plaintiff to the
correct position by speaking to The Plaza's payroll manager and director of room dining.  (Bravo
Dep. at 11:5-23, 6:3-5, 17:20 to 18:3; Lai Dep. at 71:16 to 73:8, 77:11-20).  The fact that he did
so – and the information he received, which confirmed that plaintiff was classified as a private
dining bartender – further establishes The Plaza's decision to recall plaintiff to the Palm Court
was not pretext for discrimination, but at worst a mistake.

 Consequently, plaintiff's Second, Fourth, and Sixth Causes of Action warrant dismissal
with prejudice.

### B. Plaintiff's Age Discrimination Claim Fails Because No Evidence of Discriminatory Animus Exists and The Hotel Legitimately Relied on the Recall List

 As with his national origin, race, and color discrimination claims, plaintiff bases his age
discrimination claim solely on unsupported conjecture.  He admits that no one at The Hotel ever
made any derogatory comments about his age.  (Pl. Dep. at 154:23 to 155:5).  Instead, the only
theory he offers to support his claim is that when the Hotel closed in 2005, "all" of the bartenders
were over 40 years old, and the Hotel hired younger bartenders when the Hotel reopened in
2008.  (Pl. Dep. at 130:22 to 131:11).

16

Like his national origin, race, and color discrimination claims, plaintiff's age discrimination theory fails because all of the allegedly over-40 bartenders, other than plaintiff and Flanagan, accepted enhanced severance and gave up their recall rights at The Plaza. (Pl. Dep. at 130:22 to 132:14). The Hotel did not fail to recall these employees because of their ages, but because they voluntarily gave up their recall rights in exchange for additional severance benefits.

Likewise, plaintiff's age discrimination theory is undermined by the fact that Flanagan, who is also in his mid-forties, was initially recalled to a service bartender position. After a review of his classification showed that in 2005, he was actually classified as a bartender at the Hotel's Oyster Bar – a front bartender position – he was immediately moved to a front bartender position. (Cedeno Dep. at 22:13-19; Lai Dep. at 30:4-19). That the Hotel placed Flanagan, who falls within an age-protected category, in a front bartender position belies plaintiff's claim that his age was the real reason the Hotel did not move him into a front bartender position.

Furthermore, as described above, no record evidence exists to refute the Hotel's legitimate, non-discriminatory reasons for recalling plaintiff to the Palm Court or to otherwise establish that it was motivated by plaintiff's age, or any other protected category, in doing so. As such, plaintiff's First and Fifth Causes of action warrant dismissal with prejudice.

### C. Plaintiff's Third Cause of Action Warrants Dismissal Because Neither The Plaza Nor Its Employees Engaged in Unlawful Discrimination

To the extent plaintiff's Third Cause of Action, under Section 8-107(13) of the NYCHRL, entitled "Employer liability for discriminatory conduct by employee, agent or independent contractor" states a separately-cognizable cause of action, this claim should be dismissed for the reasons described above: namely, that neither The Plaza nor its employees engaged in any unlawful discriminatory conduct.

17

## CONCLUSION

For the foregoing reasons, defendants respectfully request that this Court grant their motion for summary judgment and dismiss plaintiff's Second Amended Complaint in its entirety and with prejudice.

Date:   December 2, 2011
        Newark, New Jersey                 Respectfully submitted,

                              **LITTLER MENDELSON, P.C.**

                              By: /s/ William P. McLane
                                    William P. McLane

                              Attorneys for Defendants

Firmwide:105310748.1 048088.1044