UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CARLOS RIVERA,

                                            ECF Case
                                            10 Civ. 6661 (WHP)

                    Plaintiff,


PLAZA ACCESSORY OWNER, LP, et al.,

                    Defendants.

-----------------------------------------------------------X

## PLAINTIFF'S COUNTER STATEMENT PURSUANT TO LOCAL CIVIL RULE 56.1 IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Carlos Rivera, by his undersigned attorneys, submits this Counter

Statement pursuant to Local Civil Rule 56.1 in opposition to Defendants' Motion for

Summary Judgment. Plaintiff responds to the assertions in Defendants' Rule 56.1

Statement without conceding that each and every one of the assertions is a statement of

material fact.

**Plaintiff's Responses to Defendants' Statement Pursuant to Local Civil Rule 56.1**

1.      The Hotel encourages all employees including Plaintiff, who acknowledged

receiving The Plaza's Discrimination and Harassment Prevention Policy – to report

discriminatory or harassing conduct to their supervisors, Human Resources

representatives, or a toll-free ethics hotline.

**Response:** Admit that Plaintiff received The Plaza's Discrimination and Harassment

Prevention Policy on or around February 21, 2008. Deny that Defendants' encouraged its

employees, including Plaintiff, to report discriminatory or harassing conduct to their

supervisors, Human Resources representatives, or a toll-free ethics hotline.

By way of further response, Defendants state that the Hotel encouraged individuals to report discrimination; however this was not the case. To be clear, The Plaza Hotel closed for renovations in 2005 and it entered into an agreement that preserved the right of its employees to be recalled if their positions still existed when the hotel reopened. (Certification of Fausto E. Zapata, Jr. ("Zapata Cert."), Ex. H).

On or around March 2008, Plaintiff complained to Rajan Lai, Director of Human Resources, that he had been discriminated against because when he was recalled he was demoted from a front bartender position to a service bartender position and Lai responded by laughing at him. (Pl. Dep. at 128:4-10; 133:24-25; 134:1-2; Cedeno Dep. at 19:4-22:5; 40:3-41:18).

To elaborate further, front bartenders earn gratuities and service bartenders do not because front bartenders deal with the public. Moreover, the service bar is situated in the kitchen and the duties involve servicing waiters who bring drinks to the guest rooms. Notably, front bartenders do not have to share gratuities with the service bartenders. (Pl. Dep. at 136:15-20; Flanagan Dep. at 5:15-6:6; 100:20-101:3; P 412; P 1). The front bartender position is earned through seniority. (Flanagan Dep. at 6:7-25).

The front bar position is considered a better position than the service bartender position by most people, including The Plaza management. (Flanagan Dep. at 7:19-8:19). According to Flanagan, Plaintiff became a permanent front bartender at the Oak Bar in or around 2000/2001. (Flanagan Dep. at 13:2-25).

To better understand Plaintiff's complaint, it is important to note that Plaintiff and Liam Flanagan were both front bartenders at the Plaza before it closed in 2005.

After Flanagan, who is Caucasian, was recalled to work at The Plaza, he was told that he was going to be assigned to work at The Palm Court, a service bar. (Flanagan Dep. At 32:15-25). He did not find this acceptable because he was told by the Union and Tom Torberg, The Plaza Beverage Manager in 2005, that he would be recalled as a front bartender. To address this issue, Flanagan spoke to Bjorn, The Palm Court Manager, and he explained to Bjorn that he had seniority rights to the front bartender position and Bjorn told him that he would inquire with Human Resources. After Bjorn spoke to Lai, he told Flanagan that Lai stated that if what Flanagan stated was true, he would be reassigned to the front bartender position. (Flanagan Dep. At 34:9-35:11). The following day, Flanagan told Lai that bartenders with greater seniority were entitled to select the bar and the schedule they wanted to work. Later that day, Lai told Flanagan that he was going to be reassigned to the Rose Club or the Champagne Bar, both of which were front bars. (Flanagan Dep. at 36:12-37:7).

A week after Flanagan spoke to Lai, Plaintiff also went to Human Resources to ask that he be reassigned to one of the front bars, but Plaintiff was told that he was a service bartender and that he would not be moved. Moreover, Plaintiff was told that he did not have the skills required to be a front bartender. (Flanagan Dep. at59:17-60:8; Pl. Dep. at 127:5-12).

Flanagan discussed Plaintiff's situation with Evangelista, The Plaza Beverage Director. Evangelista was hired to work at The Plaza in 2007 as a Beverage Director. He was responsible for The Rose Club and the Champagne Bar. Evangelista was involved in the hiring process in that he made recommendations for people that he thought would be good bartenders and these individuals were interviewed by Bueno, Director of Sales, and

Human Resources. As Director of Outlets, Bueno was in charge of all food and beverage functions, including The Palm Court, The Champagne Bar and The Rose Club. Flanagan told Evangelista that it appeared that he had "pawned" off to Human Resources Plaintiff's demotion and Evangelista stated that the decision to reassign Plaintiff to The Palm Court was made by Human Resources. Flanagan told Evangelista that he and Plaintiff were similarly situated. They held the same position, bartender at the front bars, and worked at The Plaza for almost the same amount of time so they had almost identical seniority in the bartender title. Flanagan reminded that Evangelista that Flanagan himself was assigned to The Palm Court after being recalled and that after he complained, he was reassigned to the front bartender position but when Plaintiff complained about the same thing happening to him, he was told that he was a service bartender. Flanagan noted that Evangelista had worked at The Plaza during the time that Plaintiff was a front bartender and that he surely saw Plaintiff working in this capacity. (Flanagan Dep. At 61:7-62:11; Cedeno Dep. At 29:22-30:14; Evangelista Dep. At 9:13-10:17; 15:12-18; Bueno Dep. at 5:25-6:5).

Flanagan also discussed Plaintiff's demotion with Bueno. Flanagan explained to Bueno that when he complained about being assigned to work as a service bartender, he was reassigned to the front bartender position, but when Plaintiff complained nothing happened. Bueno did not respond to Flanagan's statements. (Flanagan Dep. at 63:12-64:8).

Flanagan and Plaintiff also discussed Plaintiff's belief that he had been discriminated because when Flanagan complained he was reassigned to a front bar position but when Plaintiff complained, he was told that he would not be reassigned from

the service bartender position. (Flanagan 63:12-64:8). According to Flanagan, his coworkers were asking why Plaintiff and Tejada, a former front bartender that was Hispanic and over 40 years old, were working as service bartenders when they should have been working as front bartenders. He further testified that there was an assumption that it was because Plaintiff and Tejada were Hispanic. (Flanagan Dep. at 64:9-20; Bueno Dep. at 55:19-56:17; Pl. Dep. at 130:24-131:11; 134:16-24). Flanagan also believed that Plaintiff had been discriminated against; Flanagan is Caucasian.

Notably, when Flanagan started working at The Champagne Bar in March 2008, all of the bartenders at front bars were newly hired and less qualified than Plaintiff. All of them were Caucasian and very young; they were in their early to mid 20's and early 30's.

For instance, Robert Kenyon was a bartender at one of the front bars. Kenyon is Caucasian man in his early 20's. Kenyon was terminated within a year due to his poor work performance. Evangelista testified that he was disappointed with Kenyon's work performance. Robert Kenyon was fired by Bueno for giving drinks away. (Flanagan Dep. at 38:16-39:16; 40:16-41:10; Bueno Dep. at 38:18-39:7; Evangelista Dep. at 21:25-22:13; 21:24-22:3).

Prather Remm was also a newly hired bartender at the Champagne Bar and the Rose Club in February 2008. She is Caucasian and was in her late 20's at the time that she was hired. Evangelista testified that he had disciplinary problems with Rehm and her work ethics were not up to par with his expectations. She was terminated by Bueno for poor work performance for mishandling money. Moreover, she was habitually late to work and she was extremely inexperienced. Flanagan testified that she created problems

for other bartenders because she failed to put the bottles of liquor where they belonged, and that she was inexperienced and mentioned to Flanagan that she worked at a "beer and shots" type of bar before working at The Plaza. (Flanagan Dep. at 41:11-44:8; Bueno Dep. at 39:16 - 40:15; Evangelista Dep. at 22:14-22; 22:4-6).

Heather Buesing was also a newly hired bartender in March 2008 who also worked at the Champagne Bar and The Rose Club. (Pl. Dep. at 112:21-24; Evangelista Dep. at 19:7-12; Bueno Dep. at 41:3-12). Buesing was also Caucasian and in her early 30's. (Bueno Dep. at 44:18-20; Flanagan Dep. at 45:6-8).

Scott Teague was hired to work as a front bartender at The Rose Club and the Champagne Bar in February 2008. He was in his early 20's at the time. (Flanagan Dep. at 50:3-25; Evangelista Dep. at 14:10-16; Pl. Dep. at 112:21-24). According to Flanagan, Teague had far less experience than other front bartenders. He would get flustered working at The Rose Club because he was not used to the heavy flow of work. (Flanagan Dep. at 51:6-24). Teague was ultimately terminated for stealing from The Plaza by giving away drinks. (Flanagan Dep. at 51:25-52:21).

Eric Smades was also hired in February 2008 to work as a bartender at the Champagne Bar and The Rose Club. (Zapata Cert., Ex. P; Ex. O). Smades is Caucasian and in his early 30's when he was hired. He was ultimately terminated for poor work performance; he refused a direct order from a Manager to make a drink, a mojito, for a guest on the grounds that he was too busy. (Flanagan Dep. at 52:22-54:8).

Sean O'Toole was also hired to work as a front bartender at the Champagne Bar and The Rose Club in or around June or July 2008. He was also Caucasian and in his late 20's or early 30's. (Bueno Dep. at 43:21-23; 44:8-10; Evangelista Dep. at 19:20-20:1;

Flanagan Dep. at 46:9-47:12).

Laura Schwitzer was also a newly hired employee at The Plaza in April 2008. Notably, she was hired as a server and then she was transferred to a front bartender position at The Rose Club and Champagne Bar. (Evangelista Dep. at 20:12-18). Schwitzer was also Caucasian and in her early 20's. (Bueno Dep. at 43:24-44:7).

Rivera was far more than qualified to perform the duties of a front bartender than all the newly hired bartenders assigned to work at the front bars at the time that he was recalled in February 2008. In fact, Flanagan testified that he was very good with customers, which he observed when they worked together at The Plaza before it closed. (Flanagan Dep. at 27:25-28:7). Plaintiff performed his duties well enough that he and Flanagan trained the newly hired bartenders to perform their duties, including making specialty drinks. (Flanagan Dep. at 29:19-30:16). Notably, during the initial training period, from February 11, 2008, through March 1, 2008, Bueno observed Plaintiff during the training sessions serving the owner of The Plaza and preparing cocktails, and Bueno gave Plaintiff a lot of compliments with respect to the quality of the drinks that he was making. (Pl. Dep. at 149:6-14).

In contradiction to the argument that Plaintiff was placed in the service bartender position because the Union's paperwork indicated that was his classification, Lai initially justified appointing Plaintiff to the service bar position on the grounds that Plaintiff did not have the requisite skill set to work in the front bar after acknowledging that Plaintiff had in fact held the front bartenders position prior to the hotel's closure in 2005. (Pl. Dep. at 127:5-23).

Notably, on February 22, 2008, Fairmont indicated in its own internal forms, which Lai signed, that Plaintiff was a bartender at The Champagne Bar – a front bar. (Zapata Cert., Ex. Q).

After being demoted from the Champagne Bar to The Palm Court, Plaintiff spoke to Lai about why he was being demoted and Lai told Plaintiff that he had a different set of skills and that the new Plaza required someone with a high level of skills. During this conversation, Lai acknowledged that Plaintiff's file indicated that he was a front bartender. (Pl. Dep. at 127:5-23).

In response, Plaintiff asked for a meeting with Lai and Eddie Cedeno, Plaintiff's Union Representative. When the meeting took place in late March 2008, Plaintiff told Lai that he was not satisfied with working at The Palm Court because he had the qualifications and experience for a front bar position and that he had even worked as a front bartender for many years.

It was at this time that Plaintiff stated that he believed that he had been discriminated against and Lai laughed in response in the presence of Cedeno. During this meeting, Lai stated that Plaintiff did not have the qualifications to work as a Front Bartender. Cedeno then asked him how he came to this conclusion and he further pointed out that no one was recalled to work as a service bartender and Lai continued to state that Plaintiff did not have the qualifications and that is why he was assigned to work at The Palm Court. Cedeno then told Lai that he had personally seen Plaintiff working as a front bartender at the Plaza in 2005. Lai then stated that he based this opinion on a conversation that he allegedly had with one of the Managers that had worked at the Plaza

8

prior to its closure in 2005. (Pl. Dep. at 128:4-23; 133:24-134:2; Cedeno Dep. at 19:4-22:5; 48:6-14).

Although Cedeno complained of discrimination on behalf of Plaintiff, and Lai was the sole person charged with investigating such claims, the hotel did not investigate Plaintiff's and/or Cedeno's complaints of discrimination. (Cedeno Dep. at 48:19-23; Reus Dep. at 9:6-20). According to Cedeno, he saw no other reason except for discrimination as to why Plaintiff and Tejada were not appointed to work as front bartenders. (Cedeno Dep. at 49:6-22). After this meeting, Cedeno told Plaintiff that he was going to file a grievance to resolve this issue. (Pl. Dep. at 134:3-11).

At another meeting with Cedeno, Simo, Vanessa Miller, Evelio Tejada, and Lai, the union and Plaintiff explained to Lai that Plaintiff was a front bartender and Lai again responded by stating that Plaintiff had a different set of skills than what was required for front bartenders. (Pl. Dep. at 134:12-24; 147:6-19). Moreover, during this meeting Plaintiff and Tejada both stated that they believed that they were being discriminated against when they were moved from front bartenders to service bartender positions and that front bartenders made more money in the form of gratuities because they interacted with guests and that it was a more prestigious position. (Pl. Dep. at 135:24-136:24). In addition to complaining to Lai, Plaintiff complained to Bueno and Bueno responded by becoming angry at Plaintiff and telling Plaintiff that he did not have time to discuss his complaint and that it was inappropriate for them to discuss Plaintiff's complaints of discrimination at that time. (Pl. Dep. at 138:17 – 140:17).

After dealing with Bueno and Lai, Plaintiff was discouraged from calling Fairmont's Human Resources hotline to complain about his belief that his transfer was

discriminatory in nature. (Rivera 143:15-25). Notably, the Plaza's policy regarding

discrimination was that if there was any instance of perceived or alleged discrimination,

then it was to be brought to the attention of Human Resources immediately. (Lai 56:11-

22). Bueno did not follow this policy because instead of reporting Plaintiff's complaints

of discrimination, he only encouraged employees to report the complaints themselves to

the Human Resources Department. Lai was the person responsible for investigating

discrimination complaints at The Plaza, yet Bueno did not tell him of Plaintiff's

complaint. (Bueno Dep. at 13:15-14:2; Lai 66:12-15; Reus 9:6-20).

2.      Plaintiff was born on September 8, 1962, in the Dominican Republic.

**Response**: Admit the assertions in Paragraph 2.

3.      He identifies his race as "white."

**Response**:  Admit the assertions in Paragraph 3.   By way of further information, Plaintiff

testified that he was a white Hispanic and that when he lived in Puerto Rico, his skin

color was darker because he was exposed to sun, but in New York his skin color is

lighter.  (Pl. Dep. at 151:24-152:1).

4.      On October 12, 1988, Plaintiff began working as a bus boy in the Oak Room bar,

then part of The Plaza Hotel.

**Response**: Admit the allegations in Paragraph 4.

5.      He became a member of the Union almost immediately after commencing

employment.

**Response**: Admit the allegations in Paragraph 5.

6.      He worked as a bar back for approximately five years, then became a service

bartender in the Hotel's Edwardian Room.

**Response**:  Admit that Plaintiff was promoted to Bartender in the Edwardian Room after having worked as a bar back for approximately five years and that the Edwardian Room was a service bar.  By way of further response, Plaintiff would also work as a relief bartender at the Oyster Bar and the Oak Room when the regularly scheduled bartenders were on vacation. (Pl. Dep. at 26:15-25).

7.      Service bartenders mix drinks for the wait staff and room service personnel to serve.

**Response**: Deny the allegations contained in paragraph 7.  By way of further response, service bartenders could be assigned to cover bartenders working at one of the front bars. (Pl. Dep. at 26:15-25).

8.      Front bartenders and service bartenders at The Plaza receive the same hourly rate, but service bartenders generally receive fewer tips.

**Response**: Deny the allegations contained in Paragraph 8 to the extent that does not indicate a timeframe.  Admit that after the Union and The Plaza signed the City Hall Agreement in April 2005, the hourly rate for bartenders, service and front, were the same. (Zapata Cert., Ex. H).  The reason that there a single rate of pay for bartenders was negotiated is because the distinction between public and service bartenders was eliminated and what resulted was a single bartender position with the same hourly rate. (Cedeno Dep. at 17:8-20; 42:24-25).

    In any case, Cedeno testified that in 2005 Plaintiff was definitely not a service bartender and that he worked at the Oak Bar.  (Cedeno Dep. at 17:8-20) The service bartender position is a non-tipped position.  (Zapata Cert., Ex. I).  Plaintiff received gratuities as a bartender at The Plaza in 2005.  (Zapata Cert., Ex. J).

11

9.      At the time The Plaza closed in 2005, Plaintiff's job classification on file was "bartender" in the private dining department.

**Response**: Deny the allegations contained in paragraph 9. By way of further response, Plaintiff's job classification was bartender, not service bartender. (Zapata Cert., Ex. Z; Ex. K). In 2005, Plaintiff was a bartender in the Food and Beverage Department and within this Department, there were different assignments, including private dining. (Zapata Cert., Ex. J). Plaintiff was a bartender in private dining and in addition to his regular wages, he earned gratuities. (Zapata Cert., Ex. J; Ex. Z). At the time that the hotel closed in 2005, Plaintiff had been working as a bartender at the Oak Bar for at least five years, and on occasion he would work at the service bars. (Pl. Dep. at 71:17-21; 115:19-20; Cedeno Dep. at 8:3-9; Flanagan Dep. at 13:2-15). Moreover, when Plaintiff was recalled by the hotel, it referred to him as a bartender, not a service bartender. (Zapata Cert., Ex. N). Lai tried to argue that he referred to Plaintiff as bartender because the private dining department no longer existed. (Lai Dep. at 28:2-11). It is important to note that The Plaza classified Plaintiff as a bartender assigned to work in the Champagne Bar as of February 2008 in its own employee action form, which were signed by Lai himself and Shane Creek, General Manager at The Plaza. (Zapata Cert. Ex. Q; Zapata Cert. Ex. R.; Reus Dep. at 12:18- 14:6). Lai contradicted himself by testifying that he intended to assign Plaintiff to work as a bartender in The Palm Court, a service bar, despite having signed internal hotel documents stating that Plaintiff was a bartender and that he was assigned to work at the Champagne Bar effective February 11, 2008. (Lai Dep. at 41:20- 42:6). Moreover, a work schedule that was created in early January 2008

indicated that Plaintiff was a bartender and that he was assigned to work at The Champagne Bar and The Rose Club. (P.000368).

10.     Private dining bartenders were service bartenders who mainly prepared drinks for room service personnel to serve to guests.

**Response**: Deny the allegations contained in Paragraph 10. Plaintiff was a bartender assigned to work in the Food and Beverage Department and within that department he was assigned to private dining. During the time that Plaintiff worked in private dining, he mostly worked at the Oak Bar. (Evangelista Dep. at 8:7-18; Flanagan Dep. at 12:8-14:3; Bueno Dep. at 61:12-19; Pl. Dep. at 71:3-21; 79:19-80:2; 115:19-21; Cedeno Dep. at 7:24-8:9; 17:14-20; Bravo Dep. at 11:23-13:2).

11.     Private dining bartenders often worked in Hotel bars or outlets outside of their primary classification to cover for others, but doing so did not affect their classification unless the transfer was permanent and the manager submitted the appropriate paperwork.

**Response**: Admit the allegations contained in Paragraph 11. By way of further response, seniority determined where bartenders would work in that bartenders were permitted to select the bar and schedule that they wanted to work. Those with the most seniority were able to choose their preferred bar and schedule. (Pl. Dep. at 80:7-14; 85:3-9; 156:24-157:2 Evangelista Dep. at 12:8-13:5; Bueno Dep. at 66:3-15; Cedeno Dep. at 12:9-17; 14:25-15:23; Flanagan Dep. at 23:19-25). Plaintiff had greater seniority than all of the newly hired bartenders assigned to work at The Rose Club and The Oak Bar in March 2008. (Bueno Dep. at 70:25-71:7).

12.     In late 2004, the Hotel informed its employees and the Union of its plan to close in 2005 for approximately two years for a major transformation from solely a transient

hotel to a multifaceted condominium apartment, condominium hotel, and transient hotel.

**Response**: Admit the allegations contained in Paragraph 12.

13.     The Union and Hotel engaged in extensive negotiations regarding the renovation's impact on bargaining unit employees.

**Response**: Deny the allegations contained in Paragraph 13, but admit that the Union and the Hotel bargained over the impact the Hotel's renovations would have on the terms and conditions of Union members.

14.     On April 13, 2005, the Hotel and the Union reached an agreement known as the "City Hall Agreement," so named because the Mayor of New York City played a role in establishing the terms on which the parties eventually agreed.

**Response**: Admit the allegations contained in Paragraph 14.

15.     The City Hall Agreement reaffirmed that the Industry-Wide Collective Bargaining Agreement ("the Industry-Wide Agreement") remained binding on the Hotel and the Union unless explicitly modified by the City Hall Agreement.

**Response**: Admit the allegations contained in Paragraph 15.

16.     Under the City Hall Agreement, affected bargaining unit employees could relinquish any right to recall or rehire when the Hotel reopened and instead receive "enhanced severance benefits," which equaled two times the severance benefits otherwise due the employees under the Industry-Wide Agreement.

**Response**: Admit the allegations in Paragraph 16.  By way of further information, Union members were told that their recall rights entitled them to return to The Plaza and that those with greater seniority could select their assignments.  (Flanagan Dep. at 23:19-24:11).  Cedeno testified that after the hotel closed, workers would be recalled based on

14

seniority to the their old jobs. (Cedeno Dep. at 10:19-11:7). Moreover, bartenders had the right to choose which bar they wanted to work at based on seniority, however the Hotel did not allow Plaintiff to exercise this right. (Cedeno Dep. at 12:9-19).

17.    Alternatively, affected employees could forego enhanced severance, retain their recall rights, and receive a regular severance in accordance with the City Hall Agreement.

**Response**: Admit the allegations contained in Paragraph 17.

18.    The City Hall Agreement required the Hotel to recall such employees to their "prior classification, as the same is available."

**Response**: Admit the allegations contained in Paragraph 18.

19.    Plaintiff chose to forego enhanced severance and retain his recall rights.

**Response**: Admit the allegations contained in Paragraph 19.

20.    All of the Hotel's other bartenders, except Liam Flanagan – who is Caucasian and in his mid-forties – chose enhanced severance and waived their recall rights.

**Response**: Admit the allegations in Paragraph 20.

21.    As early as 2005, before The Plaza officially closed, Plaintiff expressed concern that his job classification was incorrect.

**Response**: Admit the allegations contained in Paragraph 21.

22.    In January 2007, during the renovation, Plaintiff expressed his belief that the Union listed him under the wrong job classification.

**Response**: Admit the allegations contained in Paragraph 22.  By way of further response, Plaintiff wrote a letter in January 2007 to his Union in response to a letter that he received from John Martin, Corporate Director of Employee Relations at the Fairmont, dated November 29, 2006, stating that the job classification that he held no longer

existed, he believed that the Union had classified him as a bar back, a position that had

been eliminated. (Pl. Dep. at 74:5-23; 82:8-15; 84:22-84:13; 85:10-86:5; 100:18-24;

102:11-21; P 413; P643). On that note, Kenny Okutani, The Plaza Hotel Director of

Sales for the Asian Market, wrote a letter on Plaintiff's behalf addressed to the Union

stating that Plaintiff was an employee of the Food and Beverage Department and that he

had worked as a bartender at the Oak Bar from 2001 through 2005. (Pl. Dep. at 92:24-

93:25; 94:22-23; P 410). Plaintiff asked Mr. Okutani to write the letter in case there was

any doubt that Plaintiff was a front bartender. (Pl. Dep. at 96:3-12; 97:2-7). In February

2008, Plaintiff received a response to the Mr. Okutani's letter when Cedeno told Plaintiff

that his position front bartender and according to Plaintiff this cleared up the confusion.

Additionally, any confusion as to Plaintiff's classification was cleared up within

Fairmont's Employee Action Form in February 2008. (Pl. Dep. at 107:16 – 108:5; P

2033).

23.     Plaintiff contacted the Union in an effort to reclassify his position – which he

thought was incorrectly recorded as bar back – to bartender.

**Response**: Admit the allegations contained in Paragraph 23.

24.     Upon reopening, the Oak Bar, which still existing, was no longer operated by The

Plaza, but by an outside company. The Plaza had no authority to place any employee

there.

**Response**: Admit the allegations contained in Paragraph 24.

25.     Plaintiff talked to the Union about getting a job at the Oak Bar, but the Union

said it was not possible because the Hotel no longer operated it.

**Response**: Admit the allegations contained in Paragraph 25.

26.     The Hotel operated two new bars in 2008: the Champagne Bar in its lobby and the Rose Club.

**Response**: Admit the allegations contained in Paragraph 26.

27.     In January 2008, in accordance with the City Hall Agreement, Plaintiff received a letter from Director of Human Resources Rajan Lai, requesting Plaintiff contact the Hotel to confirm his intention of returning to The Plaza as bartender effective February 11, 2008.

**Response**: Admit the allegations contained in Paragraph 27.

28.     When Plaintiff called the Hotel, Lai – who had never met Plaintiff was not employed by the Plaza when it closed – told him the Hotel would recall him as a service bartender in the Palm Court (a restaurant in the Hotel lobby which, at the time, primarily served afternoon tea service).

**Response**: Admit the allegations contained in Paragraph 28.

29.     Lai and Carlos Bueno, the Hotel's new director of outlets, recalled Plaintiff to the Palm Court bar solely on recall lists approved by the Union that showed Plaintiff's classification as a private dining bartender.

**Response**: Deny the allegations contained in Paragraph 29. Carlos Bueno obtained classification lists that applied to Plaintiff from The Plaza's human resource department. (Bueno Dep. at 19: 20-24; 20:2-16; 23:6-17). Moreover, the list approved by the Union classified Plaintiff as a bartender and the Human Resources Manager working at the Plaza in 2005, David C. Jones, provided Plaintiff a letter stating that he was a bartender as of 2005. (Zapata Cert., Ex. U; Ex. T). Plaintiff was appointed to a service bartender position in early 2008 despite the fact that the front bartender position was a position that

was obtained through seniority of bartenders, meaning that if a service bartender had sufficient seniority, he or she would be entitled to bid for and be appointed to a front bartender position. (Flanagan Dep. at 6:6-8:13). Cedeno and Evangelista both testified that The Plaza only had one classification for bartenders. (Cedeno Dep. at 15:4-15; Evangelista Dep. at 23:5-8). It should be noted that the decision to appoint Plaintiff to the service bartender position at The Palm Court was made by Lai and then conveyed to Bueno. (Bueno Dep. at 33:10-34:9). Flanagan was also told by Evangelista that the decision to appoint Plaintiff to the service bartender position was made by Lai. (Flanagan Dep. at 65:20-66:14). Notably, in 2005, Flanagan was told by his Union that that those bartenders that did not accept the enhanced severance could return to work and those with grater seniority could select which bars they wanted to work at. (Flanagan Dep. at 23:19-24:11).

30.       When the Hotel reopened, separate private dining bartender positions no longer existed, so Lai and Bueno recalled Plaintiff into another service bartender position in the Palm Court.

**Response**: Admit that when the Hotel reopened, the job classification of Private Dining was eliminated. (Zapata Cert. Ex. L). Deny that Plaintiff was a service bartender at the time the Hotel closed. (Zapata Cert., Ex. J; Ex. K). Admit that Plaintiff was placed in a service bartender position when he was recalled in 2008. By way of further information, when the Champagne Bar opened on March 1, 2008, Plaintiff, Liam Flanagan, Robert Kenyon, Prather Rehm, Heather Businc, Eddie Meade and Scott Tegue were assigned to work there as bartenders. (Pl. Dep. at 112:16-24; 121:4-11; 124:9-15). Plaintiff worked at the Champagne Bar for one or two days before Bueno told him that he was being

demoted from the Champagne Bar to the Palm Court to work as a service bartender. (Pl.

Dep. at 121:16-122:7). Plaintiff questioned why he was being demoted and Bueno told

him that he would look at Plaintiff's file and that if there was an error, Bueno would

correct it. (Pl. Dep. at 123:9-13). Notably, Bueno told Plaintiff that he was changing

Plaintiff's position because Bueno and Lai had looked at Plaintiff's file and they

discussed what Plaintiff's position would be, and that Plaintiff belonged in The Palm

Court. (Pl. Dep. at 123:14-24). In contradiction to the argument that Plaintiff was placed

in the service bartender position because the Union's paperwork indicated that was his

classification, Lai initially justified appointing Plaintiff to the service bar position on the

grounds that Plaintiff did not have the requisite skill set to work in the front bar after

acknowledging that Plaintiff had in fact held the front bartender's position prior to the

hotel's closure in 2005. (Pl. Dep. at 127:5-23). Notably, on February 22, 2008, Fairmont

indicated in its own internal forms, which Lai signed, stated that Plaintiff was a bartender

at The Champagne Bar – a front bar. (Zapata Cert. Ex. Q). After being demoted from

the Champagne Bar to The Palm Court, Plaintiff spoke to Lai about why he was being

demoted and Lai told Plaintiff that he had a different set of skills and that the new Plaza

required someone with a high level of skills. During this conversation, Lai

acknowledged that Plaintiff's file indicated that he was a front bartender. (Pl. Dep.

127:5-23).

31.    Like Lai, Bueno did not work at The Plaza before it closed in 2005, so he did not

know Plaintiff before his recall as a service bartender.

**Response**: Admit that Bueno did not work at The Plaza before it closed in 2005 and that

he did not know Plaintiff before Plaintiff was recalled.

32.     After he reported to work at the Hotel in February 2008, Plaintiff told Bueno that he felt he should be working in a front bar (Rose Club or Champaign Bar) rather than the Palm Court restaurant as a service bartender.

**Response**: Admit the allegations in paragraph 32.

33.     Bueno, like Plaintiff, is Dominican, said he would look into the matter and correct any errors that may exist.

**Response**: Admit the allegations contained in Paragraph.

34.     Plaintiff also spoke to Lai about the issue.

**Response**: Admit the allegations contained in Paragraph 34.

35.     Lai investigated whether the Hotel recalled Plaintiff to the proper position, by among other things, confirming with The Plaza's payroll manager that Plaintiff's prior classification was, in fact, private dining bartender.

**Response**: Deny the allegations contained in Paragraph 35.  In 2005, Plaintiff was bartender in the Food and Beverage Department and within this Department, there were different assignments, including private dining.  (Zapata Cert. Ex. J; Ex. U).

36.     Lai also spoke with Karim Abdel Hamid, who was the director of room dining before The Plaza closed in 2005, and he also confirmed that Plaintiff was classified as a private dining bartender.

**Response**:  Admit that Lai testified that he spoke with Karim Abdel Hamid and that Lai alleged that Mr. Hamid told him that Plaintiff was a private dining bartender.  Deny that Lai actually spoke to Hamid regarding Plaintiff's classification.  By way of further information, Lai testified at the arbitration initiated by the Union to challenge The Plaza's actions in refusing to allow Plaintiff to exercise his seniority rights that he never had any

conversations with Hamid or Evangelista wherein he asked or discussed what Plaintiff's

or Evangelista's positions were at The Plaza prior to its closure in 2005. Conversely, Lai

also confirmed with both Evangelista and Hamid that Flangan was a front bartender at

The Plaza prior to is closure in 2005. After confirming this with Hamid and Evangelista,

Lai transferred Flanagan from The Palm Court to the Champagne Bar. (Zapata Cert., Ex.

V).

37.     Lai tried to contact the former director of Human Resources to ascertain

Plaintiff's classification before the Hotel closed, but could not reach him.

**Response**: Deny the allegations contained in Paragraph 37. By way of further response,

Lai did not ask Evangelista any questions relating to Plaintiff's prior position at The

Plaza even though Evangelista was one of the supervisors that actually supervised

Plaintiff between 2002 and 2003. Evangelista worked at the Oak Bar/Oak Room between

2002 and 2003 as an assistant manager where he directed traffic and made sure that

people had drinks, tables were clean, and make sure that people did not need anything.

(Evangelista Dep. at 7:6-8:7). He met Plaintiff during the time that he worked at the Oak

Bar/Oak Room. (Evangelista Dep. at 8:8-14). Evangelista testified that Plaintiff was a

bartender in the Oak Bar between 2002 and 2003. He was the steady bartender there and

worked in this capacity on a constant basis. (Evangelista Dep. at 8:15-9:5). Notably, as

of 2005, Plaintiff routinely worked in the Oak Room and he wore a uniform that was

unique to the Oak Room/Oak Bar. The uniform was different than the uniforms

bartenders at The Oyster Bar and The Palm Court wore. (Bravo Dep. at 11:24-13:3).

Bravo discussed Plaintiff's position with Lai. She told him that although he was

categorized as a room service bartender, he worked at the Oak Room. Plaintiff became

the permanent bartender at the Oak Room because two bartenders that worked at the Oak Room died. The Plaza needed a permanent bartender at that time and Plaintiff became a permanent bartender at the Oak Room. (Bravo Dep. at 13:4-14:11).

38.     While no doubt exists that Plaintiff at times performed work as a front bartender at the Oak Bar, there is also no doubt that the Hotel and Union listed his classification as private (service) dining when he was recalled in early 2008.

**Response**: Deny the allegations contained in paragraph 38. Plaintiff was classified as a bartender in the Food and Beverage Department on the recall list, not a service bartender. (Zapata Cert., Ex. U).

39.     Unable to verify Plaintiff's claim that he was misclassified, Lai declined to change his classification.

**Response**: Deny the allegations contained in Paragraph 39. Plaintiff asked Lai to confirm with Evangelista that he was in fact a permanent bartender at the Oak Bar because Plaintiff had worked with him prior to The Plaza's closure in 2005, and Lai never spoke to him. (Pl. Dep. at 187:14-25; Evangelista Dep. at 7:6-8:7).

40.     Plaintiff then filed a grievance with his Union in March or April 2008.

**Response**: Admit the allegations contained in paragraph 40.

41.     On November 13 and December 11, 2008, after settlement discussions broke down, the parties arbitrated the case before an impartial chairperson.

**Response**: Admit the allegations contained in Paragraph 41. By way of further response, the arbitrator found that The Plaza had violated the collective bargaining agreement by refusing to allow Tejada and Plaintiff to exercise their seniority rights. To be clear, the

arbitrator found that Plaintiff and Tejada should have been placed in either The

Champagne Bar or The Rose Club. (Zapata Cert., Ex. V)

42.     After the arbitration hearing, but before the decision, the Hotel moved Plaintiff to

a front bartender position because the Palm Court temporarily closed and, in accordance

with the Industry-Wide Agreement, the hotel transferred all Palm Court employees with

more seniority into positions in the Champagne Bar and Rose Club, The Plaza's front

bars.

**Response**: Deny the allegations contained in Paragraph 42. The Union argued that

Plaintiff and Tejada, by virtue of their prior seniority were entitled to front bartender

positions at The Champagne Bar and The Rose Club, ahead of new hires that the Hotel

hired for those positions. (Zapata Cert., Ex. V).

43.     At the arbitration, the Union argued that Plaintiff had higher seniority than

newly-hired front bartenders in the Champagne Bar and Rose Club and he should have

been recalled to a front bartender position there as opposed to the Palm Court service

bartender position.

**Response**: Admit the allegations contained in paragraph 43.

44.     The Union did not contend at any time during the arbitration that the Hotel's

motive in recalling Plaintiff to the Palm Court was to discriminate against Plaintiff

because of his age or national origin, but rather argued that the Hotel's interpretation of

the recall provisions violated the City Hall Agreement and the Industry-Wide Agreement.

The Hotel disputed that it violated either agreement.

**Response**: Admit the allegations contained in paragraph 44.

45.     The Hotel argued that before it reopened, the Union was aware of Plaintiff's classification as a private dining bartender on the recall list but never contested Plaintiff's designation; therefore, the Hotel placed Plaintiff where the agreement indicated someone within his classification should be placed.

**Response**: Admit the allegations contained in paragraph 45. By way of further information the Hotel argued that the City Hall Agreement recall provision stated that employees were required to notify the Hotel of their willingness to be recalled and reemployed to their prior classification if there were positions in that classification available. The Hotel also argued that the bartender positions for the Champagne Bar and The Rose Club was posted and Plaintiff and Tejada did not apply. These arguments were rejected by the arbitrator, who also noted that the recall letter that Plaintiff received referred to him as a bartender, not a service bartender. (Zapata Cert. Ex. V).

46.     The arbitrator sustained the Union's grievance and awarded Plaintiff full back pay, which Plaintiff received.

**Response**: Admit the allegations contained in Paragraph 46.

47.     The arbitrator made no finding that discrimination played any role in Plaintiff's recall, but rather based his decision entirely on Plaintiff's experiences as a bartender compared to others the Plaza hired after it reopened. The arbitrator never specifically held that Plaintiff's "private dining bartender" classification was incorrect.

**Response**: Admit the allegations contained in Paragraph 47

48.     Today, Plaintiff remains employed as a front bartender at the Rose Club and Champagne Bar.

**Response**: Admit the allegations contained in Paragraph 48.

49.     No one at Hotel ever made any negative comments about Plaintiff's Dominican national origin or otherwise treated him unprofessionally.

**Response**:  Admit that no one made any negative comments about Plaintiff's Dominican national origin.  Deny that no one treated Plaintiff unprofessionally.

50.     All bartenders who were at The Plaza when it closed in 2005, except for him and Liam Flanagan, who is Caucasian, voluntarily accepted enhanced severance in exchange for their recall rights at The Plaza, or chose to pursue work at the Oak Bar rather than return to The Plaza.

**Response**: Admit the allegations contained in Paragraph 50.

51.     Not all bartenders The Plaza hired when it reopened were Caucasian or white.

**Response**: Deny the allegations in Paragraph 51.  All of the bartenders hired to work at The Champagne Bar and The Rose Club were in their 20's and 30's and Caucasian. (Zapata Cert. Ex. O).

52.     Bueno participated in Plaintiff's recall to a service bartender position and is of the same Dominican national origin as Plaintiff.

**Response**: Deny that Bueno participated in recalling Plaintiff to a service bartender position.  He received the names of the individuals that were to be appointed to the bartender positions from The Plaza's Human Resources department.  (Bueno Dep. at 27:2-13).  According to Bueno, Lai and Reus were the only individuals that were involved in considering recalled bartenders in late 2007 and early 2008.  (Bueno Dep. at 16-24).  In fact, Bueno was given a list of the recalled employees with their seniority date and classification from Lai; he had absolutely no role in rehiring recalled employees.

25

(Bueno Dep. at 23:6-17; Bueno Dep. at 27:2-13).  Admit that Bueno and Plaintiff are both Dominican nationals.

53.     As food and beverage director, Bueno held a highly-visible position at the Hotel.

**Response**: Deny the allegations contained in Paragraph 53.

54.     As early as 2005, Plaintiff believed that his classification was incorrect, and admits that no one at The Plaza discriminated against him before the Hotel closed in 2005.

**Response**:

55.     Plaintiff admits that no one at The Hotel ever made any derogatory comments about his age.

**Response**: Admit the allegations contained in Paragraph 55.

56.     After a review of Flanagan's classification showed that in 2005, he was actually classified as a bartender at the Hotel's Oyster Bar – a front bartender position – he was immediately moved to a front bartender position.

**Response**: Deny the allegations contained in paragraph 56.  By way of further response, Liam Flanagan was classified as a service bartender.  Plaintiff was classified as a bartender.  (Zapata Cert. Ex. T).  Lai testified at the arbitration that only after he spoke to Hamid and Evangelista did he determine that Flanagan was front bartender at The Plaza prior to its closure in 2005.  Notably, Bueno testified that Flanagan was classified as a private bartender, the same as Plaintiff.  He based this belief on the information that he received from the Human Resources department.  (Bueno Dep. at 19:12-24).


Dated: New York, New York
       January 6, 2012

Respectfully submitted,

The Law Offices of Fausto E. Zapata, Jr., P.C.
Broadway Chambers Building
277 Broadway, Suite 501
New York, New York 10007
Tel:    212-766-9870

By:    /s/ Fausto E. Zapata, Jr.
              Fausto E. Zapata, Jr. (FZ 4957)