OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212 FAX: (212) 541-9356

**EMPLOYER**: Plaza Hotel

HTC Case #U08-378/Emergency hearing requested by the New York Hotel & Motel Trades Council, AFL-CIO RE: Management's violation of the seniority of Bartenders Carlos Rivera and Evelio Tejada.

Hearings were held at the Office of the Impartial Chairperson on November 13 and December 11, 2008.

**APPEARANCES:**

| | |
|---|---|
| For the Employer: | Rajan Lai<br>Director of Human Resources |
| Counsel for the Employer:<br>By: | Kane Kessler PC<br>David Rothfeld, Esq. |
| For the New York Hotel & Motel Trades Council, AFL-CIO:<br>Counsel:<br>By: | <br>Pitta & Giblin LLP<br>Joseph Farelli, Esq. |
| For the Union: | Billy St. Pierre<br>Eddie Cedeno |

* * *

This grievance has been brought by the Union on behalf of its members Carlos Rivera and Evelio Tejada (collectively, "Grievants") based on their claims that, when reinstated to The Plaza Hotel as Bartenders, they were, on the basis of their prior seniority at the Hotel, entitled to be placed as front bartenders in either The Champagne Bar or The Rose Club, rather than as service bartenders at The Palm Court.

Initially, the Union asked for a make-whole remedy (the difference in hourly wages and gratuities between what Bartenders earned in The Rose Club and The Champagne Bar, and what the Grievants earned working in The Palm Court). Since the close of the hearings in this case, The Palm Court has permanent closed and both Grievants bumped less senior bartenders in The Rose Club and The Champagne Bar, thus rendering unnecessary the Union's request for prospective relief. Therefore, what remains before me is the Union's claim for a make-whole remedy. Post-hearing briefs have been submitted by both sides and the arguments contained therein have been thoughtfully considered. A site inspection has been deemed not necessary by the undersigned.

The facts surrounding this case are unique and it is unlikely, because of the unusual circumstances involved, that any precedent will arise from this dispute, which is applicable to any hotel in the future.

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212  FAX: (212) 541-9356

## BACKGROUND

In early 2005, the new owners of the Plaza Hotel (CPS1Realty) announced their intention to close the Hotel for renovations and to re-open in approximately two years. A bitter labor dispute arose almost immediately with regard to the Hotel's plans and the effect it would have on the bargaining unit. On April 13, 2005, the Hotel and the Union reached an agreement. That agreement also incorporated the so-called "City Hall Agreement", many terms of which had been urged upon the Hotel and the Union by the Mayor of the City of New York and his staff, and a "labor agreement". Key to the parties' agreement was the concept that unless otherwise provided by the April 13, 2005 agreement, the terms and conditions of employment, both economic and non-economic, contained in the Industry Wide Agreement are to be adopted and continued, except as modified by the April 2005 agreement.

In order to fully understand the intent of the parties, a number of provisions of the April 2005 agreement must set forth, including those particularly applicable to bartenders. In their agreement, the parties devoted great attention to employee severance benefits/recall rights, coupled with new training and probationary periods. Those provisions constitute major modifications of the Industry Wide Agreement and were hammered out as a settlement by the parties. Among other things, except as otherwise provided in the aforementioned "City Hall Agreement", the Hotel may hire new employees from any source for the first sixty months following a re-opening of the Hotel.

When it comes to bartenders, the April 2005 agreement provides that bartenders shall be paid at the Service Bartender rate of pay, work a forty-hour week, receive straight-time benefits and may perform back bar duties, self-banking and serve and clear food at the bar. All affected employees are to be put on a recall/rehire list in order of their seniority and are to be "...rehired pursuant to the terms of the IWA, unless otherwise is agreed by the parties hereto." No such agreement is claimed by either side. There is no explicit modification of the IWA to provide that any newly hired employee shall be accorded "super seniority" over any recalled employee for any purpose.

The very first paragraph under the heading Employee Severance Benefit/Recall Rights contained in the "City Hall Agreement" expressly acknowledges that it is the intention of the Hotel to undertake major structural modifications designed to implement a radical and complete transformation of the Hotel from a transient Hotel with a permanent restaurant, banquet and other beverage and food installations and retail establishments to a multi-faceted condominium apartment, condominium hotel, transient hotel (including restaurant, banquet and other food and beverage installations) and retail complex that maximizes the legally allowable use of the current hotel for such purposes. It is clear from this, that because of the physical changes to the structure and the physical changes to the nature of the operation of the "new hotel", certain past practices could no longer continue, but all past practices were not "thrown out the window", nor was the IWA where not modified by the "explicit" terms of the April 2005 Agreement.

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212 FAX: (212) 541-9356

The Union recognized that due to the reduction in hotel rooms, there would be substantially less bargaining unit positions and employment opportunities available. This would result in the severance and/or permanent layoff of hundreds of bargaining unit employees. The parties, in recognition of the above, agreed upon a detailed severance and recall procedure for the bargaining unit employees.

Before reviewing this procedure it is important to re-emphasize that Paragraph 23 of the Industry Wide Agreement has been adopted and is applicable, except as it may have been "explicitly" modified by the April 2005 agreement.[1] Paragraph 23(A) provides in pertinent part that, "in the event of a layoff in any department, departmental seniority will be observed insofar as compatible with efficiency. In general, the last person hired in a job classification within a department will be the first laid off in such classification and the employee with the greatest seniority in the job classification in the department will be the last laid off in such job classification." Thus, unless modified by the April 2005 agreement, the Grievants who work in the food and beverage department are found under Schedule (A) – "City-Wide Minimum Wage Rates by Job Classification", in the Industry Wide Agreement. Under the broad heading "Bar", there are three classifications – Bartenders (Public Bars), Bartenders (Service Bars), and Bartenders Helpers.

In general, the "City Hall Agreement" provides that, "upon re-opening of the New Hotel, all such bargaining unit employees shall be recalled on the basis of his/her seniority and shall be rehired pursuant to the terms of the Industry Wide Agreement, unless otherwise as agreed by the parties herein."

The "City Hall Agreement" goes on to provide that employees who have not agreed to accept enhanced severance benefits and who have not waived their recall rights, (as is the case with the two Grievants herein), shall retain such rights subject to certain conditions that are then set forth in the "City Hall Agreement". That document requires the Hotel to send a written recall notice to eligible employees, notifying each employee of the scheduled re-opening of the New Hotel and of the employee's obligation to notify the Hotel of the employee's availability and ..."willingness to be recalled and re-employed to the employees' prior classification, as the same is available". It is important to note that the recall notice requirement originally required the employee to notify the Hotel of his availability and willingness to be recalled and reemployed to the employee's "employment position", as the same is available.[2] The language "employment position" was stricken and the words "prior classification" were substituted in its place. The recall notice mailed by the Hotel to the Grievants did not specify the "classification" to which they were being

[1] Neither side claims there has been such an explicit modification.

[2] The language, "as the same is available". raises the question in this case of whether these Grievants who claim they worked as front bartenders in The Oak Room Bar, a bar, which is now operated by a concessionaire, not the Hotel, are entitled to front bar positions in The Champagne Bar or The Rose Club, which bars did not exist at the old hotel and which neither physically nor by character are substitutes for The Oak Bar.

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212 FAX: (212) 541-9356

offered recall but merely stated, "you will be reinstated to the position of Bartender at The Plaza..." (Union Exhibit #8), without mentioned front bar or service bar.

Also involved in this case, are the provisions of the "City Hall Agreement" contained under the heading Training/Probationary Period. In those provisions, the Hotel announces its intention to meet the standards established in the industry for designation as a "Five Star/Five Diamond" hotel. The parties agreed that in connection therewith, all employees who are recalled after the completion of the Hotel's renovations shall be adequately trained by the new hotel for a period of sixty days in order that employees are qualified and capable to perform their job functions in a manner that meets the aforesaid "Five Star/Five Diamond" standards.

Provision is thereafter made in the agreement for the Hotel, at any time during a recalled employee's sixty-day training period and for a period of ninety days after completion of the training period (probationary employee) to discipline or discharge the employee for just cause, including failure to meet the performance standards which are attached to the agreement. It is further provided that during the probationary period, the Union shall not challenge the reasonableness of the aforementioned performance standards unless such standards specifically conflict with the express provisions of the Industry Wide Agreement. However, factually, the Union's position is not that the Grievants have been disciplined or discharged for failure to meet the high performance standards established by the new Hotel. Rather, the Union's position rests on its argument that when recalled, both Grievants had higher seniority than other front bartenders who were new hires to the front bartender positions in The Champagne Bar and The Rose Club.

Specific attention is paid in the Agreement to the possibility of discharge or discipline of employees for failing to meet performance standards.[3] Finally, in an insert page, the Union is given the right to be entitled to rebut the Hotel's *prima facie* case in situations where discharge or discipline for failing to meet performance standards is an issue.

## THE UNION'S POSITION

Prior to the re-opening, bartenders at the Plaza Hotel worked in The Oak Bar as front bartenders, as well as in The Palm Court as front bartenders, as well as the service bar for The Palm Court.[4] There were also bartenders who worked banquets and for room service. In addition, some worked for the concessionaire, One CPS Steakhouse, which no longer exists at the new Hotel. The Union agrees that under the Industry Wide Agreement, classification seniority within the Food and Beverage Department was to

[3] Neither of the Grievants has been discharged or disciplined by the Hotel for failing to meet its new performance standards as bartenders.

[4] The Hotel contends that only service bartenders worked at The Palm Court.

prevail with the exception that there was no outlet seniority. Both sides agree that when the Plaza re-opened, two new bars were created – The Champagne Bar and The Rose Club. The Oyster Bar as well as The Oak Bar remain, but are not owned by the Hotel. As previously mentioned, the Union's position herein is that the Grievants, by virtue of their prior seniority classification were entitled to front bartender positions at The Champagne Bar and The Rose Club, ahead of new hires that Hotel hired for those positions. It is undisputed that when Grievants were recalled they were told, during their re-training, that they would be assigned to The Palm Court as service bartenders. As such, their grievance is that their earnings are substantially reduced from what they would be if they were earning tips as front bartenders in either The Champagne Bar or The Rose Club.

## THE HOTEL'S POSITION

The Hotel argues that it has not violated any of the agreements. It points to the language in the "City Hall Agreement", contained in the recall notice requirements, which require the employee to notify the Hotel of his/her availability and willingness to be recalled and re-employed to the employee's prior classification "as the same is available."

At the hearings, the written recall notice from the Hotel was eventually produced. It did not mention the "classification" of Grievants but stated the laid off employees would simply be recalled as Bartenders without specifying where. Both Grievants testified in substance that when they were undergoing the new training, they were told they were going to be assigned to The Palm Court, which they understood was re-employment as Service Bartenders.[5]

The Hotel argues that prior to the renovation there were classifications at the Hotel, which no longer exist. For example, the Hotel argues that there were private Dining Bartenders/Room Service, which were of Service Bartender capacity. They argued, and the Union does not disagree, that this non-Schedule A classification no longer exists.

The Hotel also argues that it notified the Union (pursuant to the "City Hall Agreement") of its designation of the two Bartenders grieving herein as Private Dining Bartenders and that a list was sent to the Union showing that classification as Private Dining Bartenders and that there was correspondence with regard to same and there never was any contest from the Union with regard to that designation.

The Hotel also argues that when it became clear that the former Oak Room employees would not be hired by the concessionaire, the parties met and negotiated with regard to the former Oak Room Employees with "no home".[6] Those "no home" employees, according to the Hotel were assigned to The Palm Court as Service Bartenders.

[5] As previously noted Schedule A to the Industry Wide Agreement shows as job classification under the bold heading Bar "Bartenders" (Public Bars" and "Bartenders (Service Bars)", and "Bartenders' Helper".
[6] The Grievants claim that they were Oak Room Bartenders.

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212  FAX: (212) 541-9356

The Hotel also argues that the jobs in question, at The Champagne Bar and The Rose Club were posted and that the Grievants never applied for the jobs. A contention, which the Union disputes. Finally, the Hotel contends that the Union did not object to the designated worksite of the two Grievants until they came back to work and were assigned to The Palm Court and that the Union knew of their classification since at least December of 2006, as a result of numerous correspondence between the Union and the Hotel. Lastly the Hotel contends that Liam Flanagan was a Front Bartender at the old Plaza and that he was hired into The Champagne Bar because he had "front service bar" classification there.

## THE EVIDENCE

Liam Flanagan, a present Delegate, has worked at the Hotel since 1988. He worked as a Bartender from approximately 1990 until the Hotel's closing in April 2005. Between January and April 2005 he worked as a Bartender in The Oyster Bar. He testified that work schedules were posted in a glass case outside the Beverage Manager's office and that the schedule included the Oak Room, The Palm Court and the service bar, which, at that time was located in the Hotel kitchen downstairs and from which room service operated. He testified, without contradiction by the Hotel, that if vacancies occurred in shifts due to vacations relief etc., that the opportunity to work those open shifts went by seniority in the Beverage Department.

When Flanagan worked at The Oyster Bar he was a Front Bartender interacting with the customers. Presently he is a Front Bartender at The Rose Club and The Champagne Bar. He received his recall notice in early February 2008 in a letter from the Hotel and in early February came to the Hotel for orientation in the Edwardian Room and was then sent to The Palm Court for training. He testified that he was being trained at The Palm Court to work at The Palm Court and he saw only former Palm Court employees in The Palm Court who were being trained. He testified that he went to the Manager of The Palm Court and thereafter to Human Resources to ask if he had the right to work at The Champagne Bar or The Rose Club. He testified without contradiction that he was told by Human Resources that he had the right to work in either of those Bars, and the following week he went to The Rose Club and The Champagne Bar for training. According to his testimony The Champagne Bar opened around March 1 and The Rose Club opened at the end of the month of March.

Flanagan testified that prior to April 2005 he saw Rivera working at The Oak Bar as a Front Bartender and that Tejada used to work at The Oak Bar and The Oyster Bar with him and also the Room Service Bar. He testified, as did Rivera and Tejada, that he never saw any postings for the jobs at The Champagne Bar or The Rose Club and that he never filled out any application to work at either The Champagne Bar or The Rose Club.

He testified that Robert Kenyan is a new hire who is working at The Champagne Bar/Rose Club. He testified, again without dispute from the Hotel, that Kenyan was not an

employee of the Hotel prior to its closing but he was working at The Rose Club/Champagne Bar when he, Flanagan, began working there in March. Flanagan also testified that another new hire was Prather Rehm, who was not an employee of the Hotel prior to its closing and who came to work a few weeks after Flanagan began working at The Champagne Bar/Rose Club.

On cross-examination he testified that his main workstation used to be The Oyster Bar and that he saw both Grievants working as Room Servers and at The Oak Bar as well as The Oyster Bar with him. Tejada was covering for people on leave at first and towards the closing of the Hotel when people were leaving he worked more at The Oyster Bar.

Rivera was a permanent Bartender for four years at The Oak Bar. He testified that there were a total of seven Bartenders needed for the seven-day operation at The Oak Bar, two on the day shift and two on the night shift and the rest to cover the schedule.

Flanagan's testimony was supported by that of Eddie Cedeno, Union Business Agent, who prior to assuming that position, had worked at The Plaza and had frequently observed both Grievants performing Front Bartender services as needed. His testimony was not challenged by the Hotel and is fully credited by the undersigned.

Carlos Rivera testified that he began work at the Hotel in 1988 as a bus boy, then became a Bar back and was promoted to Bartender. He testified he worked as a Bartender in The Oak Bar for four days a week and on the fifth day worked in Banquets and that was since September 11, 2001. He testified that at times he worked as a relief Bartender and as a Front Bartender for vacations as well. He also worked Room Service on Saturday mornings as well as Banquets, and according to him, on his fifth day he worked wherever he was needed. He testified that prior to the old Hotel closing, he requested and received a letter dated February 14 from the Hotel signed by Ms. Nam, a Human Resources Administrative Assistant that stated among other things that he was "working in the position of Bartender in our F & B Department...". The purpose of this letter according to Rivera was to help him to find a new job. Later that year he requested and received a similar letter from David Jones, the Hotel's Human Resources Manager which stated among other things that he was "....promoted to the position of Bartender."

Rivera testified that when he received a recall letter from the Hotel in January of 2008 he called the Hotel and spoke to Rajan Lai, who told him that a position as a Bartender was available and to quit his job. He testified that he was told by Lai that the position was a Service Bartender in The Palm Court. Rivera testified he told Lai that he was an Oak Bar Bartender and Lai told him he was a service bartender at The Palm Court now.

Rivera testified he went to the Hotel on February 11, 2008, which was about a week after that conversation and began training in The Edwardian Room and thereafter for two weeks to The Palm Court to train, and then to The Rose Club, where all bartenders, whether or not they were recalled bartenders or new hires, were trained in

Fairmont manual bartender drink preparation. He testified that during training, Lai came in and Rivera told him that he would like to work at The Champagne Bar or The Rose Club because he was a front bartender, and Lai told him that he was to work at The Palm Court. There was no testimony that Lai ever gave Rivera an explanation for assigning him to The Palm Court rather than The Champagne Bar or The Rose Club. Rivera subsequently testified he encountered Lai in the Hotel cafeteria and renewed his request to which Lai said that he would like a meeting with Rivera's Business Agent. No meeting ever took place and Rivera testified that he told his Business Agent Eddie Cedeno about it, and that he, Rivera, subsequently filed a grievance.

Rivera also produced a number of copies of Beverage Staff Schedules. None of those schedules showed which year they were for and only one page showed which month they were for. Rivera's name appeared on the schedule for The Oak Bar. Rivera did not produce a full year's schedule – he claims he brought only those six schedules because they were the only ones showing him working at The Oak Bar. He claimed he had a few additional schedules at home. He gave no rational reason for taking any of these schedules in the first place. He says he took them because he "liked the Hotel and in case something like this (I assume this hearing) ever arose." With regard to a question of whether he had requested the second letter from the Hotel with regard to his work because it only mentioned him as a bartender "in our F & B Department", he insisted he requested the second letter because the first was inaccurate with regard to the number of hours he had worked.

Evelio Tejada testified that he began working at the Hotel in 1999 in the Housekeeping Department and thereafter transferred to Food and Beverage as a barback and became a bartender in late 2003. At first he worked the service bar and relief when someone was sick or on vacation. He testified he worked all of the Hotel outlets in 2004 and in 2005, between January and the closing, mostly at The Oyster Bar but that he also worked at The Palm Court. When he worked at The Oyster Bar he worked as a front bartender. He too, received a recall letter about February 11, 2008, and testified that his letter had been lost. He testified the letter did not tell him where he would be working and that he called Human Resources and left a voicemail that he was "coming back". He testified that the recall letter did not mention any specific position. When he reported to the Hotel on February 19, he was sent for orientation at the Edwardian Room and next, the Hotel Manager, Mr. Yurin, sent him to The Palm Court. He asked Yurin why he could not work at The Champagne Bar or The Rose Club, and was told to go to Human Resources to find out his rights. He did not go that same day, and on or about February 19, Tejada complained to Lai at Human Resources that his seniority was not being applied and that there were new hires in The Champagne Bar. He testified that Lai told him "his seniority does not mean anything here – you have to work at The Palm Court because we decided that you should work there". He testified that he said thank you and a day or two later grieved to his Business Agent, Eddie Cedeno.

Cedeno testified that he has been a Business Agent since July 2002 and was formerly a waiter and busboy at the Plaza Hotel, and before that, he worked as such in

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212 FAX: (212) 541-9356

The Oak Room for 17 years and had been a Delegate there for almost ten years. He testified that he saw Tejada working there, as a bartender at The Oak Bar and that he saw Rivera working there about 90% of the time that Cedeno worked there. He testified that he saw Rivera working as a barback and sometimes as a bartender in The Oak Room and sometimes in The Oyster Bar. Cedeno testified that before the renovation at the Hotel, bartenders worked as one department based on seniority, with the most senior bartenders working regularly at certain outlets. Others floated around and worked the service bar. He testified seniority determined shifts and that there was no distinction between front service bartenders and service bartenders.

Cedeno testified that he had conversations with the Hotel with regard to the recall of bartenders but cannot recall the month or day of meetings that he held with the Hotel at the Union. Those meetings dealt with when the outlets would be open and the number of bartenders needed. Present at those meetings were John Martin, the Executive Director of Employee Relations, as well as Guy Ivesha for the Hotel. Some verbal agreements were reached with regard to staffing each outlet and the number of employees in each outlet. According to Cedeno, the Hotel told him that The Palm Court, The Rose Club, The Champagne Bar, Room Service and Housekeeping would be opening. According to Cedeno, an agreement was reached only with regard to which bartenders would be recalled. At that time, there was a list of bartenders who had rejected any buyout. The positions of the Grievants, that is, the location they would be assigned, was not discussed. What was discussed was how many bartenders would be used. The Hotel told Cedeno that nine bartenders would be needed. The subject of where the recalled bartenders would be put to work was not raised.

There was a third meeting at the Union some time in February 2008 after the bartenders were recalled. Messrs. Lai, Martin, Cedeno, as well as Simo and Brian Lysell, were there for the Union. At that time the Union questioned why Rivera and Tejada were not allowed to work as front bartenders at The Champagne Bar and Rose Club, and told the Hotel that they had grieved to the Union about that. Cedeno testified that Lai said that they didn't have the skill level to be front bartenders and that they were also service bartenders and not front bartenders. No details were given by Lai with regard to their skill level. Cedeno testified that he disagreed.

Cedeno testified that an agreement was reached to offer the Grievants a sum of money to stay in those positions at The Palm Court and that if they rejected the offer, "they should be moved to The Champagne Bar and/or The Rose Club." Subsequently, Cedeno testified both Grievants rejected the offer and the Hotel, according to Cedeno, reneged on its agreement that if they rejected the offer, they should be moved to The Champagne Bar or The Rose Club. Cedeno testified that Lai made that agreement with him and thereafter reneged and told him that he would not be moving them.

On cross-examination Cedeno was shown a copy of the "Hotel Voice", which contained a "Notice to Plaza Hotel Employees". That notice, in pertinent part, stated, "Under the April 13, 2005 Agreement between the Union and the Plaza Hotel, all

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212 FAX: (212) 541-9356

employees at the Plaza Hotel who declined to accept enhanced severance are entitled to be recalled, by seniority, to available positions in their classification in the Hotel…." There was no date on that notice. Cedeno was then shown a written agreement dated April 14, 2008, between the Union and the Hotel. The second WHEREAS clause reads as follows: "WHEREAS the Hotel has informed the UNION of its desire to offer Palm Court, Rose Club and Champagne Bar food servers, busboys and food runners enhanced severance and its desire to resolve an outstanding grievance regarding the assignment of Evelio Tejada (Tejada) and Carlos Rivera (Rivera) … it is therefore agreed." The agreement then goes on to offer Tejada and Rivera the opportunity to choose from one of two options. The first is an offer of enhanced severance pay in addition to any amounts previously received by them. The second option is that each shall receive four days of incentive compensation per year of service to the Hotel and remain Service Bartenders in The Palm Court Service Bar. Both options were rejected by Tejada and Rivera. Cedeno testified that the agreement containing the offer was not made by him, but by the President of Local 6, Michael Simo. Cedeno acknowledged that the Simo agreement with the Hotel did not provide in writing that in the event Tejada and/or Rivera rejected the two options provided to them, that the grievance would remain unresolved. Cedeno went on to testify that classification seniority had been used by the Hotel to set the positions in the various outlets upon the Hotel's re-opening and that such was the reason why both Grievants should have been able to use their seniority to work in The Champagne Bar or Rose Club instead of the new hires.

Before the conclusion of his testimony, Cedeno testified that on December 1, 2007, Martin sent Simo a master list of employees regarding which employees would be recalled and which would not. Cedeno said that this was the trigger for the recall rights dispute and triggered a series of letters between Union Attorney Saltzman and the Hotel. I credit Cedeno's testimony in all respects.

Rajan Lai ("Lai") testified that he is the Director of Human Resources at The Plaza but that he did not work at The Plaza prior to its being closed for renovations. Therefore, he was without knowledge as to what bar positions the Grievants worked prior The Plaza's closing, and made no attempt to confirm or contradict the testimony of the Grievants and their witnesses that Grievants were Front Bartenders before the closing. In fact, the Hotel presented no testimony to contradict those claims by the Grievants.

Lai acknowledged that he had approved the transfer of Liam Flanagan to The Champagne Bar from The Palm Court, as requested by Flanagan after The Plaza re-opened. Lai explained that he did so after conversations with two former Plaza Hotel Managers, neither of who testified. According to Lai, they (Anthony Evangelista and Kareem Abdul) told him that Flanagan had been a Front Bartender at The Oak Bar. Lai did not claim that he asked those former Managers whether Grievants had also worked Front Bar positions at the old Plaza. Lai knew both Grievants wanted to work at The Champagne Bar or Rose Club. If he was basing his decision on where they had previously worked, he obviously should have asked people who knew where they had worked at the old Plaza.

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212 FAX: (212) 541-9356

seniority where there are employees who can be recalled who have ability to perform the job in question.

## AWARD

The Union's grievance is sustained. The Hotel shall make Grievants whole for the loss of compensation and/or tips they may have suffered from the time they requested to work at The Champagne Bar or The Rose Club until the time they were transferred to work there. I shall retain jurisdiction of this case should the parties be unable to agree upon the amount due each Grievant.

It is so ordered.

Dated: April 28, 2009
New York, New York

IRA DROGIN, under the penalties of perjury duly affirms that he is the arbitrator described herein, and that he executed the foregoing instrument.

IMPARTIAL CHAIRPERSON

# Exhibit "W"

Intentionally Left Blank

# Exhibit “X”

New York Hotel & Motel Trades Council, AFL-CIO
707 8th Avenue, New York, N.Y. 10036
(212) 245-8100

File #
U08-378

**Shop:** 189: Plaza (CPS 1, LLC) **Manager:** Rajan Lai, Director of Human Resources **Phone:** 212-759-3000

**GRIEVANT:** Mr. Carlos Rivera & Evelio Tejada
ADDRESS: CR: 66 Lexington Ave, Maplewood, NJ 07040
ET: 42 Clinton Street #1, New York, NY 10002, ,
TELEPHONE: CR: 917-518-3865 • SSN: CR: 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
JOB: Bartender • DEPT: • DOH:
INTERPRETER NEEDED?

**NATURE OF COMPLAINT:**
Emergency hearing requested by the New York Hotel & Motel Trades Council, AFL-CIO re: Management's violation of the seniority of Bartenders Carlos Rivera and Evelio Tejada.

**Contract Section Violated: 23**

**CONFERENCES WITH MANAGEMENT:**
**Dates** **Present**

**UNDISPUTED FACTS:**

**MANAGEMENT'S POSITION:**

As stated in Rajan Lai's 10/26/07 email, the bartenders that worked in private dining, including Carlos Rivera and Evelio Tejada, were Service Bartenders, who have a different skill set than the front bartenders that the Hotel's needs for the new lobby bar and the lounge. Therefore, management rightfully hired new employees, who are qualified and have the required skills, to work the front bars.

**GRIEVANT'S ACCOUNT:**

According to Carlos Rivera's resume, he was a Bartender at the Oak Bar from 2001 to April 2005. His resume also states that he had been a Bartender at the main service bar and oyster bar prior to 2001.

**UNION'S POSITION:**

Management has prevented Bartenders Carlos Rivera and Evelio Tejada from working the front bars in the Rose Club and Champagne Room, in violation of the IWA. The Hotel has seven new hires working the front bars, even though Rivera and Tejada have seniority and worked front bars prior to the Hotel's closing for renovations - as indicated on the April 2005 schedule. Due to this contractual violation, Rivera and Tejada have lost gratuities that they otherwise would have earned from working the front bars.

**RESULTS OF UNION'S INVESTIGATION:**

According to BA Eddie Cedeno, before the Plaza closed for renovations, bartenders could work in any outlet. As such, bartenders were not separated by outlet. When an opening in another outlet arose, a bartender could switch outlets based on seniority. Also, Eddie Cedeno stated that, prior to the closing, the Plaza did not have Service Bartenders.

A review of the April 2005 bartenders schedule and the 2008 employee sales performance shows that all the bartenders are new employees, except for Liam Flanagan, who is listed under the Oyster Bar heading in the April 2005 schedule.

April 2005 Bartenders Schedule
Carlos Rivera was scheduled for the Oak Bar. Evelio Tejada was scheduled for the Palm Court and "Oak SB" – i.e., Oak Room Service Bar.

08/10/07 Letter from Kenny Okutani (Guest) to Michael Simo
Okutani stated that Carlos Rivera was a bartender at the Oak Bar for the four years prior to the Hotel's closing in April 2005, and that Rivera had bartended at various stations, including the Service Bar, before that time.

Recall List - 14 Bartenders
For seniority, Carlos Rivera is listed as the third bartender (date of hire 10/12/88) and Evelio Tejada is listed as the tenth bartender (date of hire of 03/11/99). The list states that Rivera and Tejada are in the Private Dining Department. The list indicates that other

Seniority Dates

A 05/05/00 letter from Human Resources states that, as of 09/15/96, Carlos Rivera worked as a Bartender in the Palm Court Restaurant Service Bar. This information is restated in a 04/26/05 letter from Human Resources. The letters also state that Rivera was hired in October 1988.

Two letters from management - dated 05/05/00 and 04/26/05 - state that the Hotel hired Carlos Rivera on 10/12/88 and that Rivera became a Bartender in the Palm Court on 9/16/96.

Evelio Tejada's date of hire is 03/11/99. He is being paid as a regular bartender, but the Hotel is using him as a service bartender. The 2005 MOA requires the Hotel to pay all Bartenders at the Service Bartender rate of pay, which is currently $23.4280 per hour.

**WITNESSES TO SUBPOENA:**

**DOCUMENTS TO SUBPOENA:**

**INFORMATION REQUESTED:** **DATE TO COMPLY:** **RECEIVED RESPONSE:**

**UNION'S DEMAND:**

Order management to allow Bartenders Carlos Rivera and Evelio Tejada to work the front bars and make them whole for lost wages and gratuities.

**Business Agent: Eddie Cedeno** **Local: 6** **Regional: Vanessa Meade**

# Exhibit "Y"

COCKTAILS
in NEW YORK
Where to Find 100 Classics and How to Mix Them at Home
ANTHONY GIGLIO
NYC
& COMPANY
RIZZOLI

First published in the United States of America in 2004
by Rizzoli International Publications, Inc.
300 Park Avenue South
New York, NY 10010
www.rizzoliusa.com

© 2004 Anthony Giglio and NYC & Company

PHOTOGRAPHY CREDITS
Steve [illegible]: pp. 202–203; Sean Johnson: pp. 48, 76; Julien Jourdes and Nicolas Goldberg: p. 198; Peter Medilek: pp. 14, 17, 20, 22, 26, 31, 32–33, 36–37, 39, 40, 44, 46, 51, 52–53, 54–55, 59, 60–61, 63, 67, 68–69, 72, 82, 86–87, 88–89, 94, 98, 101, 102–103, 112, 114–115, 117, 118, 121, 130–131, 132, 134–135, 140–141, 143, 154, 156, 158, 162, 164–165, 166–167, 172, 176, 182, 184, 186, 197, 208, 210, 219, 229; Museum of the City of New York, The Byron Collection and Print Archives: pp. 50, 169, 175; Allison Williams: pp. 122, 180, 216.

All rights reserved. No part of this publication may be reproduced, stored in a retrieval system, or transmitted in any form or by any means electronic, mechanical, photocopying, recording, or otherwise, without prior consent of the publishers.
2004 2005 2006 2007/ 10 9 8 7 6 5 4 3 2 1

DESIGNED BY PATRICIA FABRICANT

Printed in the United States of America
ISBN: 0-8478-2664-3
Library of Congress Control Number: 2004096490



# BLOODY MARY

## OAK BAR

FEW BARS CAN CLAIM CENTRAL PARK AS THEIR FRONT YARD. And no others offer panoramic murals of old New York by Everett Shinn as an alternate view, but this grand old bar has both. The massive, oak-paneled room was a brokerage house until the Great Depression, when it was wisely converted to a bar. And although the room still evokes cigars and testosterone, thankfully, times do change: Now, both men sans jacket and even women are free to sit for a drink. (The latter since only 1974.) The popular bar is generally bustling and the banquettes with the park view are the most coveted seats in the house. In order to score one, I like to arrive soon after the 11:30 am opening, and jump-start the day with an Oak Bar Bloody Mary. The drink comes garnished with two golf ball–size olives and a shrimp—a touch of sustenance for the matutinal drinker that doesn't err on the side of becoming a salad.

*Another of the great hidden art gems of New York, the murals in the Oak Bar were painted in the 1940s by Everett Shinn, part of a group of realist painters dubbed the Ashcan School. Shinn, who arrived in New York in 1897, painted average citizens and everyday events in the city—workers and slum residents, fires and evictions—capturing scenes that previous artists had deemed unworthy of painting.*

For an especially refreshing Bloody Mary, try making your own tomato juice. Coarsely chop a few fresh tomatoes and puree them in a blender. Then strain to remove seeds, skin, and pulp.

- ounces vodka
- splash of beef broth
- splash of Tabasco
- splash of Worcestershire sauce
- ounce fresh lemon juice
- ounces tomato juice
- teaspoon prepared horseradish
- lime wedge
- Queen olives or other large green olives
- shrimp, poached, peeled, and chilled

1. Combine the firs… several ice cubes.
2. Using another… it back and forth…
3. Garnish with the l…

# Exhibit "Z"

14 Bartenders
9 Recall

| | | Name | Department | Job Classification | Date of Hire | Hourly rate | Address | City | State | Zip coc |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | F&B | Davis,Frank | Banquet Beverage | Bartender - Service Bar | 10/14/68 | 20.88 | 1031 Remsen Avenue | Brooklyn | NY | 11236 |
| 2 | F&B | Mejia,Jose L | Oak Room Beverage Staff | Bartender - Service Bar | 05/18/88 | 20.83 | 611 12th Street #3B | Union City | NJ | 07087 |
| 3 | F&B | Rivera,Carlos R | Private Dining | Bartender | 10/12/88 | 20.83 | 66 Lexington Avenue | Maplewood | NJ | 07040 |
| 4 | F&B | Rivera,Orlando | Oak Room Beverage Staff | Bartender - Service Bar | 11/21/88 | 20.83 | 3184 Grand Concourse #3B | Bronx | NY | 10458 |
| 5 | F&B | Lederhouse,Charles | Palm Court | Bartender - Service Bar | 06/07/91 | 20.83 | 7004 Boulevard East #14C | Guttenberg | NJ | 07093 |
| 6 | F&B | Arbona,Jose | Oak Room Beverage Staff | Bartender - Service Bar | 07/12/91 | 20.83 | 147 West 14th Street #1 | New York | NY | 10011 |
| 7 | F&B | Trinidad,Manuel Bienvenido | Banquet Beverage | Bartender's Helper | 04/06/95 | 19.41 | 710 4th Avenue 2nd Floor | Brooklyn | NY | 11232 |
| 8 | F&B | Diaz,Jorge A | Private Dining | Bartender's Helper | 05/22/96 | 19.09 | 8953 Metropolitan Avenue | Rego Park | NY | 11374 |
| 9 | F&B | Ramnarine,Richardo Kumar | Banquet Beverage | Bartender - Service Bar | 12/04/98 | 20.88 | 1515 Plymouth Avenue | Bronx | NY | 10461 |
| 10 | F&B | Tejada Collado,Ebelio Martin | Private Dining | Bartender | 03/11/99 | 20.83 | 42 Clinton Street #1 | New York | NY | 10002 |
| 11 | F&B | Cepero,Andre | Banquet Beverage | Bartender's Helper | 08/20/00 | 19.40 | 1738 Lexington Avenue #7H | New York | NY | 10029 |
| 12 | F&B | Ramirez,Angelo | Banquet Beverage | Bartender's Helper | 02/26/01 | 19.41 | 187 Verbena Avenue | Floral Park | NY | 11001 |
| 13 | F&B | Jimenez,Jose | Private Dining | Bartender's Helper | 02/05/03 | 19.08 | 111 Marble Hill Avenue #6J | Bronx | NY | 10463 |
| 14 | F&B | Issaka,Emmanuel S | Oak Room Beverage Staff | Bartender's Helper | 11/28/03 | 19.08 | 1605 Fulton Avenue #3F | Bronx | NY | 10457 |

P. 000004